2008 UT App 23
**STATE of Utah, Plaintiff and Appellant,**

v.

**Leroy WORTHEN, Defendant and Appellee.**

No. 20060757–CA.

Court of Appeals of Utah.

Jan. 25, 2008.

Mark L. Shurtleff, atty. gen., and Marian Decker, asst. atty. gen., Salt Lake City, for appellant.

John J. Easton, Provo; and Cleve J. Hatch, Roosevelt, for appellee.

Martha Pierce, Salt Lake City, Guardian Ad Litem.

Before GREENWOOD, P.J., BENCH and BILLINGS, JJ.

## AMENDED OPINION [1]

GREENWOOD, Presiding Judge:

¶ 1 The State brings this interlocutory appeal from the trial court's order granting Defendant's motion for in camera inspection of the alleged victim's (B.W.) mental health records. The State asserts that the trial court erred by granting Defendant's motion because (1) the trial court failed to determine whether Defendant's request fell within an exception to the physician-patient privilege under rule 506(b) of the Utah Rules of Evidence, see Utah R. Evid. 506(b), (d); (2) the sought-after records do not relate to an element or claim of Defendant's defense, as required by rule 506(d)(1) of the Utah Rules of Evidence, see id. R. 506(d)(1); and (3) Defendant did not establish, with reasonable certainty, that the records contain exculpatory, material evidence. The State also contends, and Defendant agrees, that it was

---

1. This Amended Opinion replaces the Opinion in Case No. 20060757–CA issued on November 16, 2007.

error for the trial court to order that his law clerk would review the mental health records.

¶2 We agree that the trial judge should personally review the records, but otherwise affirm the trial court's order.

## BACKGROUND

¶3 On or about July 8, 2005, Defendant and his wife's adopted child, B.W., attempted suicide and was subsequently admitted to the University of Utah Neuropsychiatric Institute (UNI). During a mental health evaluation, B.W. explained that she had "a lot of family strife recently ... [and was] getting in frequent fights with her mother." She also reported prior abuse by her biological grandparents, but denied any other abuse. Defendant states that prior to the suicide attempt, B.W. had a heated argument with her mother.

¶4 During her nineteen-day stay at UNI, B.W. participated in individual, group, and family therapy. Afterward, B.W. participated in outpatient counseling on at least twelve occasions. During that time period, B.W. wrote about her family in a journal, and some of the entries describe B.W.'s angry feelings toward her mother. For example, in one entry B.W. stated:

> My mom has pissed me off for the last time.... I feel as if I want to go out the door to [my friend's] and stay there forever.... Next time my mom gets me as pissed off as I am now, I will kill her, and that's a promise, I don't care what happens to me I just want her to die in her bed all alone in her own pain and blood.

¶5 A few weeks after this journal entry, B.W. disclosed to her therapist that Defendant had sexually abused her. B.W.'s therapist reported the alleged abuse to the police, who charged Defendant with ten counts of aggravated sexual abuse of a child. *See* Utah Code Ann. § 76-5-404.1(3) (2003). At Defendant's preliminary hearing, B.W. testified, inter alia, that Defendant had made her clean the house without her clothes on, made her lie on him, and touched her on her breasts and her genitals. She also recounted numerous other incidents of abuse spanning several years.

¶6 On cross-examination, defense counsel identified various inconsistencies in the allegations B.W. reported to law enforcement and mental health workers. Defense counsel also asked B.W. about her journal entries. In response to the prosecution's objection, defense counsel stated that the entries went to motive and were admissible for impeachment purposes. Defense counsel also detailed his defense theory, including that B.W. had previously been abused, had multiple opportunities to report Defendant's abuse but did not, had never written about the alleged abuse in her journal, hated her parents, and ultimately fabricated the allegations in order to be removed from her parents' home.

¶7 Defendant was bound over for trial. He then filed a motion to subpoena B.W.'s medical records from July, when B.W. was admitted to UNI, through October, when she first made the abuse allegations. The trial court granted Defendant's motion for the sole purpose of determining whether evidence existed that would illuminate B.W.'s feelings toward her parents. In an effort to protect B.W.'s privacy, the judge ordered his law clerk to review the records and highlight the relevant information before presenting the records to the judge for in camera review.

¶8 The State appeals from the trial court's order, arguing that it was granted in error because the trial court neglected to first determine whether the sought-after records came within the ambit of a rule 506(b) exception for privileged communications, *see* Utah R. Evid. 506(b), (d); the records do not contain evidence that goes to a claim or element of Defendant's defense, as required by rule 506(d)(1), *see id.* R. 506(d)(1); and Defendant did not establish, with reasonable certainty, that the sought-after records contain exculpatory, material evidence.

## ISSUE AND STANDARD OF REVIEW

¶9 The State contends that the trial court erred by granting Defendant's request for in camera review of B.W.'s medical rec-

ords as an exception to rule 506(b). "The existence of a privilege [or an exception thereto] is a question of law," which we review for correctness. *State v. Blake*, 2002 UT 113, ¶ 6, 63 P.3d 56.

## ANALYSIS

¶ 10 Rule 506(b) of the Utah Rules of Evidence protects, as privileged, communications between a health care provider and a patient if the communications are offered "in confidence and for the purpose of diagnosing or treating the patient." Utah R. Evid. 506(b). Under this privilege, the patient may prevent disclosure of any such communications. *See id.* However, the privilege is not absolute. There are three exceptions, *see id.* R. 506(d), only one of which is applicable here. Rule 506(d)(1) states that the "privilege does not exist" if the patient's "physical, mental, or emotional condition" is relevant "in any proceeding in which any party relies upon the condition as an element of [a] claim or defense." *Id.* R. 506(d)(1). Examining the extent of this exception, the Utah Supreme Court explained that it is not unlimited. In order to access otherwise privileged communications between a patient and a therapist, the inquirer "must show, *with reasonable certainty,* that the sought-after records actually contain 'exculpatory evidence ... which would be favorable to his [or her] defense.'" *Blake*, 2002 UT 113, ¶ 19, 63 P.3d 56 (emphasis added) (omission in original) (quoting *State v. Cardall*, 1999 UT 51, ¶ 30, 982 P.2d 79). Notwithstanding the deliberately difficult nature of the reasonable certainty test, *see id.*, "in the event the protection of victims prevents a fair trial of those accused of rape or sexual assault, the right to a fair trial must be preserved." *Id.* ¶ 10.

¶ 11 The State argues that Defendant is not entitled to in camera inspection[2] of B.W.'s medical records because Defendant did not establish that the sought-after records fall within an exception to the rule 506(b) privilege; Defendant seeks impeach-

ment evidence, which does not constitutes evidence regarding a claim or defense; and the sought-after records are not reasonably certain to contain material, exculpatory information. Defendant responds that the trial court did in fact determine that the records fall within an exception to the rule 506(b) privilege; Defendant was seeking more than impeachment evidence; and the trial court correctly determined that Defendant passed the reasonable certainty test. Based on the specific facts presented, we agree with Defendant.

### I. Exception to the Rule 506(b) Privilege

█ ¶ 12 The State's first contention is that the trial court erred because it did not initially conduct an analysis to determine if the records at issue came within an exception to the rule 506(b) privilege. Put another way, the State argues that the trial court should have first addressed "whether [B.W.'s] records fell within a recognized exception to rule 506" instead of basing "its entire decision on whether defendant had shown a 'reasonable certainty' that the records contained exculpatory material evidence." In support of its argument, the State relies on *State v. Cardall*, 1999 UT 51, 982 P.2d 79, which it asserts requires a defendant to overcome two distinct hurdles before gaining in camera access to an alleged victim's mental health records: (1) a defendant must demonstrate that the records fall within an exception to the rule 506(b) privilege and (2) a defendant must establish, with reasonable certainty, that the records contain material, exculpatory evidence. *Cardall*, however, is not particularly supportive of the State's argument because the *Cardall* court did no more than briefly mention rule 506(d)(1) before discussing the reasonable certainty test. *See id.* ¶¶ 29–30. For example, in analyzing the defendant's argument, the court first explained that *Cardall*'s defense theory was that the victim "[wa]s a habitual liar, ... she fabricated her story about being raped, ... she [wa]s mentally

---

2. In the context of sexual abuse cases, in camera review is typically required in order to "serve [the defendant's] interests without destroying the [State's] need to protect the confidentiality" and privacy of sexual abuse victims. *Pennsylvania v.*

*Ritchie*, 480 U.S. 39, 61, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Thus, the trial court first reviews the records at issue, in camera, to determine materiality.

and emotionally unstable, and ... the records [would] show that on at least one occasion these psychological traits led her to lie about an attempted rape or sexual touching by the school janitor." *Id.* ¶ 29. The court then stated that although this theory "alone appears to give [the defendant] the right to review [the victim's] school psychological records" under rule 506(d)(1) because they go to the "focus of his defense," the defendant was further required to "show with reasonable certainty that exculpatory evidence exists which would be favorable to his defense." *Id.* ¶ 30. In addition, the court found the rule 506(d)(1) exception applicable because the victim's "mental and emotional state [was] an important element of Cardall's defense." *Id.* ¶ 31. The court then went on to apply the reasonable certainty test to the defendant's request. *See id.* ¶¶ 33–34.

¶ 13 In this case, the trial court essentially followed the same analytical roadmap as the *Cardall* court. For example, in granting Defendant's motion, the trial court first stated that the records Defendant sought are generally privileged under rule 506(b) of the Utah Rules of Evidence. It then noted that "rule [506(b) ] is subject to certain exceptions, one of which is Rule of Evidence Rule 506(d)(1)." The trial court then explained that the exception only applies if a defendant can "show, with reasonable certainty, that the sought-after records actually contain exculpatory evidence which would be favorable to his defense." And finally, the trial court concluded that Defendant had, in fact, satisfied the requirements of the reasonable certainty test. Because this parallels the Utah Supreme Court's reasoning in *Cardall, see id.* ¶¶ 29–34, we conclude that the trial court sufficiently addressed whether Defendant's request fell within an exception to rule 506(b) before addressing the reasonable certainty test.

## II. Elements of a Claim or Defense

■ ¶ 14 The State next argues that the trial court erred by granting Defendant's

request because "motive to fabricate is not an element of a claim or defense" sufficient to bring Defendant's request within the rule 506(d)(1) exception. More specifically, the State argues that the sought-after evidence is merely impeachment evidence and therefore does not constitute evidence that would support an "element of [a] claim or defense." [3] Utah R. Evid. 506(d)(1). Rule 506(d)(1) suspends the rule 506(b) privilege for "a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which *that condition is an element of any claim or defense.*" Although the Utah Supreme Court has applied this exception in various cases, *see, e.g., State v. Gonzales,* 2005 UT 72, 125 P.3d 878; *State v. Blake,* 2002 UT 113, 63 P.3d 56; *Cardall,* 1999 UT 51, 982 P.2d 79, it has yet to specifically define what constitutes an "element of [a] claim or defense." Utah R. Evid. 506(d)(1). In urging this court to adopt the State's interpretation of the phrase element of a defense, the State sets forth two theories. First, it encourages this court to interpret the term element as it relates to criminal offenses, and in doing so, relies on several cases that state motive is not an element of an offense. And second, the State asserts that the Utah Supreme Court has "sub silentio" overruled *Cardall* to hold that impeachment evidence can never qualify as an element of a defendant's defense.

■ ¶ 15 We reject the State's first argument that because motive is not an element of an offense, it cannot be an element of a defense. We believe that the elements of a criminal *offense* do not necessarily correlate with the elements of a criminal *defense.* In addition, the notion of elements of a criminal defense produces tension with the State's burden of proof in a criminal prosecution. In *State v. Spillers,* 2007 UT 13, 152 P.3d 315, the Utah Supreme Court reiterated that criminal defendants bear no burden of persuasion, but rather, may offer evidence that

---

3. The State does not address the term "claim" as included in rule 506(d)(1). *See* Utah R. Evid. 506(d)(1). Likewise, Utah courts have focused on what constitutes an element of a defense, not on what constitutes a claim of a defendant or whether that is a separate concept. *See generally State v. Gonzales,* 2005 UT 72, 125 P.3d 878; *State v. Blake,* 2002 UT 113, 63 P.3d 56; *State v. Cardall,* 1999 UT 51, 982 P.2d 79. Thus, this opinion does not focus on the claim aspect of the rule 506(d)(1) exception.

would interject doubt concerning any element of the State's case.

> [A] defendant in a criminal case bears no burden of persuasion. The ultimate burden of proving the defendant's guilt beyond a reasonable doubt remains on the state, whether defendant offers any evidence in an effort to prove affirmative defenses or not. It is sufficient ... that the evidence or lack thereof creates a reasonable doubt as to any element of the crime.

*Id.* ¶ 19 (citations and internal quotation marks omitted). Thus, a criminal defendant is, subject to relevancy and other evidentiary requirements, entitled to offer evidence that would cast doubt on any of the elements that the State is required to prove.

¶ 16 In this instance, roughly speaking, the State is required to prove that Defendant, occupying a position of special trust, sexually abused B.W. *See* Utah Code Ann. § 76–5–404.1(3) (2003). Defendant's defense is that he did not commit the crime and he intends to show that by illustrating that B.W. hated her parents and that she therefore made up the allegations of abuse because she wanted to be placed in another home. Thus, although he may be seeking impeachment evidence, Defendant is also seeking evidence that would interject doubt into the State's assertion that he committed the crime. Therefore, the sought-after records support an element of Defendant's defense.

¶ 17 In reaching this conclusion, we also reject the State's assertion that the Utah Supreme Court has twice, "sub silentio," overruled *Cardall* and held that impeachment evidence cannot constitute an element of a defense under any circumstances. In the first case on which the State relies, *State v. Blake*, 2002 UT 113, 63 P.3d 56, the Utah Supreme Court did not directly address whether impeachment evidence goes to an element of a claim or defense, but rather, mentioned the issue in dicta. *See id.* ¶ 19 n. 2. The *Blake* court specifically refrained from elaborating on the elements of a criminal defendant's claim or defense requirement under rule 506 because the defendant in that case failed to establish, with reasonable certainty, that the sought-after evidence would be exculpatory:

> [The defendant] seeks disclosure of the counseling records for use in impeaching the victim's testimony. It is unlikely that impeachment evidence qualifies as an element of a claim or defense. However, we need not reach the question of whether an element of a claim or defense is implicated since [the defendant] has not shown with reasonable certainty that the records he seeks contain exculpatory evidence.

*Id.* Because the court's comments regarding impeachment evidence in *Blake* are dicta, they are not binding authority. *See Jones v. Barlow*, 2007 UT 20, ¶ 28, 154 P.3d 808.

¶ 18 In *State v. Gonzales*, 2005 UT 72, 125 P.3d 878, the second case on which the State relies, the supreme court stated that impeachment evidence was not "an element of [the defendant's] defense." *Id.* ¶ 43. However, the court's statement was in relationship to the facts present in that case. The defendant in *Gonzales* had obtained the victim's mental health records from UNI without using the proper procedures, i.e., without first obtaining a subpoena from the court and seeking in camera review. *See id.* ¶¶ 12, 45. In reviewing the access retroactively, the court stated:

> [The defendant] argues that [the victim's] mental health was an element of a claim or defense in the lawsuit, and therefore his request for the records was proper.
>
> [The defendant's] argument is flawed in two ways. First, his defense is simply "I didn't do it." He wishes to use [the victim's] mental health records to impeach her credibility as a witness-part of his defense strategy, but not actually an element of his defense. Second, regardless of whether [the victim's] mental health is an "element" of [the] defense, it is the process by which the records were obtained, not the status of the records as privileged or unprivileged that prevents [the defendant] from reviewing them.

*Id.* ¶¶ 42–43. While we reiterate that the court's holding in *Gonzales* was confined to the propriety of the subpoenaed medical records, we also believe that this case is distinguishable from *Gonzales*.

¶ 19 First, unlike *Gonzales,* Defendant is not seeking general impeachment evidence to bolster a bald assertion that he did not commit the crime, nor is he seeking evidence that would broadly undermine B.W.'s truthfulness. Rather, Defendant is alleging that he did not commit the crime, and he seeks evidence documenting that B.W. harbored animosity toward her parents. His defense is that B.W.'s hatred toward her parents motivated her to fabricate the abuse allegations so that she could be moved to a new home. As the United States Supreme Court noted in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), there is a distinction between general impeachment evidence used to establish a lack of truthfulness and impeachment evidence "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316, 94 S.Ct. 1105. Although we do not comment on whether one method of impeachment is more vital to a criminal defendant than the other, we note that in *Gonzales,* the defendant was seeking general impeachment evidence, *see* 2005 UT 72, ¶ 43, 125 P.3d 878, while in this case, Defendant is seeking impeachment evidence to establish B.W.'s bias, prejudice, and ulterior motive, which are directly related to her accusations against Defendant. Based on this distinction, we agree with Defendant's assertion that his case is different from *Gonzales,* and in fact, more like *Cardall. See State v. Cardall,* 1999 UT 51, ¶ 29, 982 P.2d 79 (granting the defendant's request for in camera review based, in part, on the defendant's assertion that the victim was a habitual liar, "she fabricated her story about being raped, ... she [wa]s mentally and emotionally unstable, and ... the records [would] show that on at least one occasion these psychological traits led her to lie about an attempted rape or sexual touching by the school janitor").

¶ 20 Our supreme court has not recently addressed the nature of evidence that would qualify as an element of a criminal defense capable of overcoming rule 506(b)'s privilege. The State suggested at oral argument that virtually no evidence would meet that test in sexual abuse cases because of the legitimate concerns about further victimization and nonreporting in such cases. *See Blake,* 2002 UT 113, ¶¶ 11–15, 63 P.3d 56. As noted in *Goldsmith v. State,* 337 Md. 112, 651 A.2d 866 (1995), it is appropriate in such cases to impose a heavy burden of persuasion beyond a mere claim of relevance to the credibility of a victim. Otherwise, "such a broad right of discovery would substantially destroy the privilege." *Id.* at 876 (citation and internal quotation marks omitted). The further requirements that the evidence is reasonably likely to be exculpatory and that it be examined in camera for materiality prevents a merely "speculative assertion that the records might be relevant for impeachment." *Id.* However, in order for the phrase "element of [a] claim or defense" to have any meaning or relevance in a sexual abuse prosecution, there needs to be some possibility of its application to assure that a defendant receives a fair trial. *See Blake,* 2002 UT 113, ¶ 10, 63 P.3d 56. We believe the facts of this case present a situation where the sought-after records satisfy the requirement of an element of a defense warranting in camera review.

¶ 21 We also note that the cases both parties rely on, *Blake, Gonzales,* and *Cardall,* all spring from the United States Supreme Court decision, *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). We find that case and its predecessor, *Davis,* instructive here.[4] In *Ritchie,* the Court relied on the Due Process Clause of the United

---

4. In *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the documents at issue were in a state agency's possession and were therefore released for in camera inspection under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which requires the government "to turn over evidence *in its possession* that is both favorable to the accused and material to guilt or punishment." *Ritchie,* 480 U.S. at 57, 107 S.Ct. 989 (emphasis added). In contrast, the documents in this case are not in the state's possession. While some state courts have refused to extend *Ritchie* to cases where the documents at issue are in the hands of a private party, *see, e.g., United States v. Hach,* 162 F.3d 937, 947 (7th Cir.1998); *Goldsmith v. State,* 337 Md. 112, 651 A.2d 866, 871, 873 (1995), other courts have done so. *See, e.g., State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719, 722 (Ct.App.1993).

States Constitution to affirm a state court decision granting the defendant's request for in camera inspection of the victim's mental health records. *See id.* at 56, 58, 107 S.Ct. 989. After balancing the competing interests of the victim and the criminal defendant, the Court determined that in camera review of the records would satisfy the defendant's need to present a defense while minimizing the intrusion into the victim's confidential information. *See id.* at 57–58, 107 S.Ct. 989. The Court was significantly influenced by the fact that the privilege at issue was qualified, not absolute. *See id.* As is the case here, the legislature had contemplated situations in which the defendant's right to discover material, exculpatory evidence would yield to the state's need to protect the records at issue. *See id.* (recognizing qualified nature of the privilege at issue).

¶ 22 Although the Court referenced the requirement of materiality, *see id.* at 58 & n. 15, 107 S.Ct. 989, it nonetheless granted Ritchie's request without any knowledge of what was actually in the records because Ritchie was claiming innocence and was therefore "entitled to have the ... file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial." *Id.* at 58, 107 S.Ct. 989. Going one step further, in this case, Defendant is claiming innocence and he is seeking specific evidence that would reveal B.W.'s motivation to fabricate. We conclude that this evidence, if believed by the fact finder, could affect "the outcome of [Defendant's] trial." *Id.*

¶ 23 Our decision is further influenced by *Davis*, a case on which the *Ritchie* Court relied. *See id.* at 51–54, 107 S.Ct. 989 (discussing *Davis* ). In *Davis*, the prosecution obtained a protective order prohibiting the defendant's use of a witness's juvenile delinquency records, where a statute provided for the anonymity of such records. *See* 415 U.S. at 309, 94 S.Ct. 1105. In holding that the Confrontation Clause required the privilege to yield to the criminal defendant's right to "show the existence of possible bias and prejudice," the Court acknowledged that "[t]he partiality of a witness is subject to exploration at trial and is always relevant as discred-

iting the witness and affecting the weight of his testimony." *Id.* at 317 94 S.Ct. 1105 (internal quotation marks omitted). The *Davis* Court was persuaded by the fact that in criminal cases, unlike in civil cases, the defendant's liberty is at stake and, thus, it is important for the defendant to be able to expose the potential bias of the witness:

"Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination...."

*Id.* (quoting *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). While limiting the reach of *Davis* in the pretrial discovery stage, the *Ritchie* Court noted that the error at issue in *Davis* was that the defendant "was denied the right 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Ritchie*, 480 U.S. at 54, 107 S.Ct. 989 (omission in original) (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. 1105). We find that Defendant's request here is similar. Although he is subject to the more stringent requirements of the reasonable certainty test, he is seeking evidence to expose to the jury that they can rely on to "appropriately draw inferences relating to the reliability of [B.W.]." *Id.* Thus, we conclude that the evidence Defendant is seeking supports an element or a claim of his defense-that B.W. falsely accused him.

### III. Reasonable Certainty Test

#### A. Materiality

¶ 24 The State next argues that the trial court erred by granting Defendant's

request because "Defendant has not shown a reasonable certainty of finding exculpatory material evidence ... where Defendant already has access to ample non-privileged evidence of [the victim's] motive to fabricate." Thus, the State argues, the sought-after records should not be produced because they are cumulative, and therefore, not material. Notably, the State concedes that "[D]efendant did show a reasonable certainty that [B.W.'s] mental health records contain evidence of her motive to fabricate the charges here," but it contends that this evidence is not discoverable because it is not material.

¶ 25 The State's emphasis on Defendant's burden to establish, at this juncture, that the evidence he seeks is material is mistaken. In *Blake,* the supreme court explained that in order for a court to grant a request for in camera inspection of otherwise privileged communications, the defendant "must show, with reasonable certainty, that the sought-after records actually contain 'exculpatory evidence ... which would be favorable to his defense.'" 2002 UT 113, ¶ 19, 63 P.3d 56. The court further stated that at this stage, the defendant has no burden to establish that the records are material: "Upon satisfying the 'reasonable certainty' test, *the court would then conduct an in camera review for materiality." Id.* ¶ 23 (emphasis added); *see also Cardall,* 1999 UT 51, ¶ 30, 982 P.2d 79 ("[I]f a defendant can show with reasonable certainty that exculpatory evidence exists which would be favorable to his defense, [he has] the right to have otherwise confidential records reviewed by the trial court to determine if they contain material evidence."). Consequently, under *Blake,* Defendant must show only that the evidence he seeks would be favorable to his defense; the issue of materiality is one for the trial court to determine when reviewing the records.[5]

¶ 26 Further, the State's assertion that the records are cumulative, and therefore immaterial, is premature. *See People v. District Court,* 719 P.2d 722, 726 n. 2 (Colo.1986) ("[We] note the prematurity of this issue. At this time, we do not know whether the victim will testify, nor to what she would testify at the time of trial. Any decision on the merits of this at this time would, of necessity, be speculative."); *Goldsmith v. State,* 337 Md. 112, 651 A.2d 866, 875 (1995) ("After the victim testifies on direct examination, the trial judge will be in a better position to evaluate what is exculpatory evidence and what is irrelevant."). Although the State points out that B.W.'s diary entries may contain similar information to that which Defendant is seeking from B.W.'s therapist, depending on what evidence is introduced at trial, the information may still prove to be material. In *State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719 (Ct.App.1993), the Wisconsin Court of Appeals considered the same argument the State is advancing here and rejected it:

> It may well be that the evidence contained in the psychiatric records will yield no information different from that available elsewhere. However, the probability is equally as great that the records contain independently probative information. It is also quite probable that the *quality* and probative *value* of the information in the reports may be better than anything that can be gleaned from other sources. Finally, the information might well serve as a *confirmation* of [the victim's] reality problems....

*Id.* at 724. More recently, the Wisconsin Supreme Court observed that even though similar evidence may already be available to the defendant, it is not necessarily cumulative:

> [T]he preliminary showing for an in camera review requires a defendant to set forth, in good faith, a specific factual basis demonstrating a reasonable likelihood that the records contain relevant information necessary to a determination of guilt or innocence and *is not merely cumulative* to other evidence available to the defendant.... This test essentially requires the

---

5. Although the trial court will address materiality, Defendant is not precluded from arguing that the evidence he seeks is material. *See Cardall,* 1999 UT 51, ¶ 32, 982 P.2d 79 ("[W]here 'a defendant is aware of specific information contained in the file ..., he is free to request it directly from the court, and argue in favor of its materiality.'" (omission in original) (quoting *Ritchie,* 480 U.S. at 60, 107 S.Ct. 989)).

court to look at the existing evidence in light of the request and determine, as the *Shiffra* court did, whether the records will likely contain evidence that is *independently probative* to the defense.

*State v. Green*, 2002 WI 68, ¶ 34, 253 Wis.2d 356, 646 N.W.2d 298 (emphasis added). Other courts have analyzed whether cumulative evidence may be material in the context of sexual abuse cases and have concluded affirmatively. *See, e.g., People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 577 n. 44 (1994) ("We cannot agree with the suggestion by the separate opinion that further evidence of the existence of the note or production of the note itself if contained in counseling files would be unnecessary because it is cumulative. Cumulative evidence can be probative."). Because we agree that evidence that exists in more than one form may prove to be independently probative at trial, we decline to accept the State's argument that the evidence Defendant seeks is cumulative and therefore immaterial.

### B. Application of the Reasonable Certainty Test

■ ¶ 27 The State commented at oral argument that the reasonable certainty test establishes such a high standard that a criminal defendant will most likely never meet its requirements in cases regarding sexual abuse. Although supreme court precedent sets a stringent standard, we believe Defendant has satisfied that standard in this case.

■ ¶ 28 Under the reasonable certainty test, Defendant must establish first that "the counseling records exist" and second, "reasonable certainty[ ] that the sought-after records actually contain 'exculpatory evidence ... which would be favorable to his defense.'" *Blake*, 2002 UT 113, ¶ 19, 63 P.3d 56 (quoting *Cardall*, 1999 UT 51, ¶ 30, 982 P.2d 79). As noted earlier, "[t]he difficulty in meeting this test is deliberate and prudent in light of the sensitivity of these types of records and the worsening of under-reporting problems in the absence of a strong privilege." *Id.* Thus, as the supreme court has explained, while the reasonable probability standard is somewhat vague in that it generally "lies somewhere between 'mere possibili-

ty' and 'more likely than not,'" the reasonable certainty standard, within this context, "lies on the more stringent side of 'more likely than not.'" *Id.* ¶ 20. Consequently, to access in camera review to privileged records, Defendant must show that the records he seeks exist and that there is reasonably certainty that they will contain exculpatory evidence that is favorable to his defense.

¶ 29 In applying the reasonable certainty test to this case, our inquiry begins with identifying Defendant's defense. As previously explained, Defendant's theory of the case is that he did not commit the crime, and he intends to show that by presenting evidence that B.W. hated her parents and that she made up the allegations because she wanted to be placed in another home. In *Cardall*, the defendant advanced similar allegations about the victim, and the supreme court ruled that the defendant was entitled to in camera review of the records because the evidence may have supported the defendant's assertion that the allegations were false. *See* 1999 UT 51, ¶ 34, 982 P.2d 79. Similarly, in this case, if in fact the records document B.W.'s animosity toward her parents and her desire to be removed from their home, that evidence would be favorable to Defendant's theory that B.W. had a motive to lie about the allegations.

¶ 30 Our next inquiry is whether the records exist and whether there is reasonable certainty that they will contain exculpatory evidence favorable to Defendant's defense. In *Blake*, the Utah Supreme Court expounded on what constitutes a sufficiently detailed request for medical records:

Where a defendant's requests for in camera review is accompanied by specific facts justifying the review, a court will be much more likely to find with reasonable certainty that exculpatory evidence exists which would be favorable to his defense. However, when the request is a general one, such as [a] request ... for any impeachment material that might happen to be found in the privileged records, a court ought not to grant in camera review. At a minimum, specific facts must be alleged. *These might include references to records of only certain counseling sessions, which are al-*

*leged to be relevant,* independent allegations made by others that a victim has recanted, or extrinsic evidence of some disorder that might lead to uncertainty regarding a victim's trustworthiness.

*State v. Blake,* 2002 UT 113, ¶ 22, 63 P.3d 56 (internal quotation marks omitted) (emphasis added). In this instance, Defendant is seeking B.W.'s therapy records from the specific period of July to October 2005. To show that the records exist and that they contain the evidence Defendant alleges, he provides a calendar documenting B.W.'s therapy dates. He also asserts that B.W.'s mother was present for at least one of the therapy sessions at which B.W. described her feelings toward her mother.[6] Defendant also provides several journal entries in which B.W. describes her animosity toward her parents, and admission and discharge summaries from UNI, which contain references to B.W.'s "significant family issues" and her strained relationship with her mother. Based on the materials accompanying Defendant's request, we conclude that there is reasonable certainty that the evidence Defendant seeks exists and will contain the information he alleges.

---

6. Under rule 506(b) of the Utah Rules of Evidence, the presence of B.W.'s mother at therapy sessions does not necessarily waive the privilege. *See* Utah R. Evid. 506(b) (discussing that the privilege extends to communications between a health care provider and a parent or guardian "who [is] present to further the interest of the patient because [such parent or guardian is] rea-

## CONCLUSION

 ¶ 31 We conclude that the trial court properly considered whether Defendant's request for medical records came within the reach of an exception to the rule 506(b) privilege. We also hold that Defendant's argument advanced in favor of in camera review was based on an element of a defense, and that the trial court was not required to rule on materiality before granting Defendant's request. Finally, we agree with the parties' assertion that the trial judge, not a law clerk, should review the records at issue because of their sensitive nature and the need to limit the number of people allowed to view B.W.'s confidential medical records.[7]

¶ 32 WE CONCUR: RUSSELL W. BENCH, Judge, and JUDITH M. BILLINGS, Judge.

---

sonably necessary for the transmission of the communications, or participation in the diagnosis and treatment under the direction of the physician or mental health therapist").

7. Based on the fact that the parties agree, and because this is a sexual abuse case, in camera review by the trial judge himself is warranted.