2009 UT 79

**STATE of Utah, Plaintiff and Co–Petitioner,**

v.

**Leroy WORTHEN, Defendant and Respondent,**

**Guardian Ad Litem, Party in Interest and Co–Petitioner.**

Nos. 20080128, 20080163.

Supreme Court of Utah.

Dec. 8, 2009.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for plaintiff.

John J. Easton, Provo, for defendant.

Martha M. Pierce, Salt Lake City, for the Office of the Guardian Ad Litem.

Paul G. Cassell, Salt Lake City, Margaret Garvin, Susanna Cowen, Portland, OR, for amicus National Crime Victim Law Institute.

Heidi M. Nestel, Salt Lake City, for amicus Utah Crime Victims Legal Clinic.

## INTRODUCTION

NEHRING, Justice:

¶ 1 The State charged the Respondent, Mr. Worthen, with ten counts of aggravated sexual abuse of his adopted teenage daughter B.W. After the district court bound him over for trial, Mr. Worthen subpoenaed B.W.'s mental health records relating to treatment she received between July and October 2005. Mr. Worthen claimed that the records contained evidence supporting his defense that B.W. had extreme hatred and frustration toward the Worthens and therefore had a motive to fabricate the allegations in order to be removed from the Worthen home. Mr. Worthen conceded the requested records were privileged under the psychotherapist-patient privilege found in rule 506 of the Utah Rules of Evidence. He contended, nevertheless, that the records fell under an exception to the psychotherapist-patient privilege, which allows access to otherwise privileged records when a party's physical, mental, or emotional condition is an element of any claim or defense. If the elements of the exception are met, the records are made available to the trial judge for in camera review. Mr. Worthen argued that B.W.'s motive to lie was an element of his defense. The district court granted in camera review of the requested records.

¶ 2 The State successfully petitioned for interlocutory review. The State argued to the Utah Court of Appeals that Mr. Worthen had not met the elements of the rule 506(d)(1) exception because (1) he had not sufficiently alleged that B.W.'s mental or emotional condition was an element of his defense, (2) impeachment evidence cannot be an element of a defense, (3) he failed to show to a reasonable certainty that the requested records contained exculpatory evidence favorable to his defense, and (4) the requested records were both immaterial and cumulative. The court of appeals affirmed the district court. We granted certiorari.

## BACKGROUND

¶ 3 After evidence surfaced that B.W.'s biological relatives had abused her, the State removed B.W. from her home. She was eventually placed in the home of Mr. and Mrs. Worthen in Vernal, Utah. The couple later adopted B.W. In July 2005, after an argument with Mrs. Worthen, B.W. attempted suicide and was admitted to the inpatient program at the University of Utah Neuropsychiatric Institute. B.W. remained at UNI for nineteen days where she underwent individual, group, and family therapy. Her discharge summary states that "significant family issues existed, and that very significant cognitive issues were observed." The discharge summary also states that B.W. "was highly skeptical that her family could care for her or love her[,] ... looked for ways to interpret statements and behavior in a way to mesh with her negative thinking ... [and] was very prone to major misinterpretations."

¶ 4 After her release from UNI, B.W. returned to the Worthen home in Vernal and began outpatient counseling with Dr. Carolyn Henry at the Ashley Family Clinic. During this time, B.W. kept a journal in which she expressed her frustration and anger at her mother, general hatred of her adoptive parents, and her desire to be with a new family. For example, the entry on October 1, 2005, states as follows:

My mom has pissed me off for the last time. She thinks that just because she's in pain I'm always mean to her ... I can count on one hand how many times she's cooked our food in 4 years, how many times she's cleaned the house and how

many times she's actually acted as if she cares. She's the one without responsibility! I feel as if I want to run out the door to [B.W.'s friend's house] and stay there 4–ever. Next time my mom gets me as pissed off as I am not [sic], I will *KILL* her, and that's a promise, I don't care what happens to me I just want her to die in her bed all alone in her own pain and blood! I will kill her if she gets me as pissed of[f] as I am now ... I swear I'll kill the both of them! No matter what it takes.

¶ 5 On October 27, 2005, B.W. disclosed to Dr. Henry that Mr. Worthen had repeatedly sexually abused her and, as required by law, Dr. Henry reported the allegation to the authorities. Mr. Worthen was charged with ten counts of aggravated sexual abuse of a child.

¶ 6 At Mr. Worthen's preliminary hearing, B.W. testified to numerous incidents of abuse spanning the years she lived at the Worthens' home. Although cross-examination of B.W. revealed some inconsistencies between her allegations and the journal entries, the district court bound Mr. Worthen over for trial. Mr. Worthen then filed a motion to subpoena B.W.'s medical records from July to October 2005. Specifically, Mr. Worthen sought in camera review of B.W.'s medical and therapy records for communications relating to: (1) B.W.'s denial of abuse by Mr. Worthen, (2) "cognitive problems and major misinterpretation problems," and (3) a motive to fabricate the allegations stemming from her hatred of her parents. Mr. Worthen conceded the records were generally subject to the doctor-patient privilege and the psychotherapist-patient privilege found in rule 506 of the Utah Rules of Evidence.

¶ 7 Mr. Worthen argued, however, that the mental health records he sought fell under rule 506(d)(1), an exception to the psychotherapist-patient privilege. The exception concerns communications relevant to a physical, mental, or emotional condition when that condition is an element of any claim or defense. Attached to Mr. Worthen's Memorandum in Support of Defendant's Subpoena for

Medical and Therapy Records were copies of passages from B.W.'s journal, the discharge summary from UNI, and a calendar disclosing the specific days on which B.W. saw Dr. Henry.

¶ 8 The district court granted in camera review of the requested records "to discover any statements concerning the complainant's feelings toward her parents." The district court denied in camera review of the requested records for evidence that B.W. "suffers from a disorder which affects her ability to accurately perceive, remember, or relate events in her life," or "suffers from a disorder which would affect her ability to be trustworthy" because Mr. Worthen had not shown to a reasonable certainty the records contained exculpatory evidence pertaining to those issues. Similarly, the district court also denied in camera review of the requested records for evidence that B.W. denied that Mr. Worthen had abused her.

¶ 9 The State petitioned for interlocutory review of the order granting in camera review, which was granted. The Utah Court of Appeals affirmed the district court's order.[1] First, the court of appeals held that "the trial court sufficiently addressed whether Defendant's request fell within an exception" to the privilege "before addressing the reasonable certainty test." *State v. Worthen*, 2008 UT App 23, ¶ 13, 177 P.3d 664. Second, the court of appeals held that communications related to an "element of a claim or defense" under rule 506(d)(1) refers to "evidence that would interject doubt into the State's assertion that [Mr. Worthen] committed the crime." *Id.* ¶¶ 14–16. The court of appeals specifically noted that impeachment evidence " 'directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand' " would satisfy the rule 506(d)(1) exception while general impeachment evidence that challenged the general credibility of a witness would not. *Id.* ¶ 19 (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Finally, the court ruled that Mr.

---

1. The district court's order initially stated that the judge's law clerk would perform the in camera review. On appeal, both parties agreed that the judge himself should be the one to review the records. This issue has not been pursued on certiorari.

Worthen had shown to a reasonable certainty that B.W.'s records existed and that they contained exculpatory evidence. *Id.* ¶ 30. The court of appeals also declined to remand for a consideration of materiality based on the State's contention that the records were cumulative of communications made in B.W.'s journal, and therefore immaterial, and instead held that any determination of materiality made before in camera review would be premature. *Id.* ¶ 26.

¶ 10 The State and guardian ad litem petitioned this court for certiorari review, which we granted. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a) (2008).

## STANDARD OF REVIEW

¶ 11 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court." *Bluemel v. State,* 2007 UT 90, ¶ 9, 173 P.3d 842. "We review the court of appeals' decision for correctness;" we grant no deference to its conclusions of law. *Id.*

## DISCUSSION

¶ 12 We granted the State's petition for certiorari on the following issues: (1) whether impeachment evidence relating to Mr. Worthen's assertion of the alleged victim's motivation to lie may qualify as a claim or defense for the purposes of rule 506(d)(1) of the Utah Rule of Evidence and (2) whether the court of appeals erred in its assessment of the State's argument that the mental health records in this case are immaterial. We also granted the guardian ad litem's petition for certiorari on the following issues: (1) whether the court of appeals erred in its evaluation of the determinations a district court must make to ascertain whether the requirements of rule 506(d)(1) have been met and (2) whether the court of appeals erred by failing to consider constitutional and statutory provisions relating to a victim's rights.

¶ 13 The State's first issue presents a narrower question than the issue presented by the guardian ad litem. The guardian ad litem calls into question the court of appeals' formulation of the analytical method a district court should follow when confronted with the rule 506(d)(1) exception. We will take up both issues together, with a focus on the court of appeals' assessment of the determinations a district court must make to ascertain whether the requirements of rule 506(d)(1) have been met. We will then discuss the court of appeals' assessment of the materiality of the evidence sought. We will conclude our analysis with a discussion of the court of appeals' obligation to analyze any effect the rights of victims may have on this appeal.

I. ALTHOUGH THE COURT OF APPEALS ERRED IN ITS ANALYSIS OF WHETHER THE VICTIM'S MENTAL HEALTH RECORDS FALL UNDER THE RULE 506(d)(1) EXCEPTION BECAUSE IT DID NOT ANALYZE WHETHER B.W.'S EMOTIONAL OR MENTAL CONDITION IS AN ELEMENT OF ANY CLAIM OR DEFENSE, THIS ERROR DOES NOT REQUIRE REVERSAL

¶ 14 Rule 506(b) of the Utah Rules of Evidence protects, as privileged, communications between a health care provider and a patient if the communications are made "in confidence and for the purpose of diagnosing and treating the patient." Utah R. Evid. 506(b). The privilege described in rule 506(b) has three exceptions. Only the exception set out in rule 506(d)(1) is relevant to this appeal.[2] Rule 506(d)(1) states that the privilege does not exist if the patient's "physical, mental, or emotional condition" is relevant "in any proceeding in which that condition is an element of any claim or defense."

¶ 15 This court has interpreted the rule 506(d)(1) exception to contain the additional requirement that a defendant show to a reasonable certainty that the records sought

---

**2.** This court has addressed the meaning of rule 506(d)(1) in three other cases, all of which considered whether a defendant accused of sexual abuse could be granted in camera review of the mental health records of his alleged victims. *State v. Gonzales,* 2005 UT 72, 125 P.3d 878; *State v. Blake,* 2002 UT 113, 63 P.3d 56; and, *State v. Cardall,* 1999 UT 51, 982 P.2d 79.

contain exculpatory evidence. In *State v. Cardall*, we stated, "if a defendant can show with reasonable certainty that exculpatory evidence exists which would be favorable to his defense," the defendant is entitled to review of the evidence by the trial court for a determination of materiality. 1999 UT 51, ¶ 30, 982 P.2d 79. In *State v. Blake*, we explained that to meet the reasonable certainty test, a defendant must show "that the sought-after records actually contain 'exculpatory evidence ... which would be favorable to his defense.'" 2002 UT 113, ¶ 19, 63 P.3d 56 (quoting *Cardall*, 1999 UT 51, ¶ 30, 982 P.2d 79).

¶ 16 We will first discuss whether the court of appeals properly determined that Mr. Worthen met the requirements of rule 506(d)(1). This discussion will include an inquiry into (1) whether the court of appeals properly determined that B.W.'s mental or emotional condition was an element of Mr. Worthen's defense and (2) the meaning of an element of a defense under rule 506(d)(1). We will then discuss whether the court of appeals erred in determining that Mr. Worthen met the reasonable certainty test.

*A. The Court of Appeals Erred in Failing to Determine Whether the District Court Properly Concluded That B.W.'s Emotional or Mental Condition Was an Element of Mr. Worthen's Defense*

¶ 17 The court of appeals erred by failing to first analyze whether B.W.'s mental or emotional condition was an element of Mr. Worthen's defense and not merely fuel for impeachment of B.W.'s expected testimony. Specifically, the court of appeals did not assess whether B.W.'s "feelings towards her parents" is a physical, mental, or emotional condition under rule 506(d)(1). We hold this was error because the communication of a "feeling" or emotional state to a therapist, is not itself a mental or emotional condition.

Nevertheless, we conclude that in this case the error does not require reversal because Mr. Worthen does not seek communications of a general emotional state, but rather statements that express B.W.'s animus toward the Worthens or a motive to fabricate allegations of abuse based on her feelings.

¶ 18 Rule 506(d)(1) provides an exception to the psychotherapist-patient privilege for "a communication relevant to an issue of the physical, mental, or emotional condition of the patient," in proceedings "in which *that condition* is an element of any claim or defense." (Emphasis added.) In addressing whether the trial court properly applied the requirements of rule 506(d)(1), the court of appeals did not analyze whether "B.W.'s feelings toward her parents" is a mental or emotional condition under the rule or whether the trial court failed to make a similar inquiry. Instead, the court of appeals focused its inquiry on whether B.W.'s motive to lie was an element of Mr. Worthen's defense. Although the court of appeals examined B.W.'s motive to lie, it did not explore whether a motive to lie constitutes a mental or emotional condition under the rule such that in camera review of the records for statements made to B.W.'s therapist about her "feelings" is warranted.

¶ 19 We hold that the threshold test of a rule 506(d)(1) exception is whether the party seeking in camera review of privileged records has sufficiently alleged that the witness' mental or emotional condition itself is an element of any claim or defense. Only after this first question is answered may a reviewing court evaluate whether the person seeking access to the exception has shown that the records contain exculpatory evidence to a reasonable certainty.

¶ 20 This is our first occasion to explore the contours of what constitutes a condition under rule 506(d)(1).[3] The State urges us to rule that only a condition subject to a formal

---

3. Although a physical condition also is included within the exception, in this case we need only focus on the meaning of mental or emotional condition. We acknowledge, however, that the presence of the doctor-patient privilege and mention of physical conditions in rule 506 informs our interpretation of a mental or emotional condition. We also acknowledge that the rule contemplates both mental and emotional conditions. Because neither party has suggested a difference between a mental condition and an emotional condition, and because it is unclear whether B.W. has a mental or an emotional condition in this instance, we leave a discussion of any distinction between the two for another day.

medical diagnosis can qualify as a condition under the rule. Mr. Worthen argues for a more expansive definition that would include as a condition B.W.'s expressed hatred of her adoptive parents.

¶ 21 We conclude that while a mental or emotional condition under rule 506(d)(1) is not limited to diagnosable disorders or illnesses, the rule does not include mere expressions of emotion. The challenge that we confront is how to distinguish between mental or emotional conditions and mental or emotional phenomena that are not conditions. A useful tool that may be used to differentiate between phenomena that rises to the level of a condition and those that do not is temporality. A condition is not transitory or ephemeral. A mental or an emotional condition is a state that persists over time and significantly affects a person's perceptions, behavior, or decision making in a way that is relevant to the reliability of the person's testimony. Professor Wigmore developed this thought in his treatise, in which he stated, "An interpretation that most readily comes to mind is the reading that 'condition' denotes a longer-lasting ... mental state than momentary 'emotion,' 'feeling,' or 'pain.'" *Wigmore on Evidence: Evidentiary Privileges* § 6.13.3, 991, 1001 (2002).

¶ 22 It would be unrealistic and ill-advised for this court to believe that we could craft a definition of "mental or emotional condition" that includes all phenomena subject to traditional diagnostic labeling yet excludes in a principled manner lesser phenomena. *See State v. Killpack*, 2008 UT 49, ¶ 35, 191 P.3d 17 ("Over the past several decades, healthcare professionals have made broad advances in the diagnosis and treatment of mental disease.") We look to a similar case, *State v. Cardall*, for general guidance on what constitutes a mental or emotional condition under rule 506(d)(1). In *Cardall*, a defendant accused of sexual abuse sought in camera review of an "anxiety exam" administered at the alleged victim's school and documents regarding the alleged victim's allegations of

abuse against a school janitor. 1999 UT 51, ¶ 10, 982 P.2d 79. We granted in camera review of the requested privileged records. We found it important to note that the focus of the defendant's defense was that the alleged victim was a "habitual liar," that she "fabricated her story," that she was "mentally and emotionally unstable," and that "on at least one previous occasion these psychological traits led her to lie about an attempted rape or sexual touching by the school janitor." *Id.* ¶ 29.

¶ 23 The result in *Cardall* on the issue of privilege invites closer inspection. We seized upon the term "psychological traits" to describe Mr. Cardall's assertions that his alleged victim was a habitual liar, a fabricator, and mentally and emotionally unstable. *Id.* Tellingly, these psychological traits were accompanied by false allegations of sexual misconduct against a school janitor. Although we cannot infer from *Cardall* the nature and degree of psychological traits necessary to constitute a mental or emotional condition, it appears to us more likely than not that none of the victim's traits, taken alone, would have established the existence of an emotional condition.[4]

¶ 24 Having described the correct method to evaluate the rule 506(d)(1) exception, we turn to the merits of this case. The court of appeals erred because it did not discuss whether B.W.'s mental or emotional condition, as distinguished from statements made to mental health professionals that might be used to impeach her at trial, was itself an element of Mr. Worthen's defense.

¶ 25 Mr. Worthen argued to the district court that B.W. had extreme hatred towards her parents, which drove her to explore a way to escape the Worthens' home. He argued that her hatred motivated her attempted suicide, found voice in her violent journal entries, and led her to fabricate abuse allegations. While the district court held that Mr. Worthen had not shown to a reasonable cer-

---

**4.** We do not mean to suggest that a victim may not have a mental or emotional condition that manifests itself in lying, hatred, animosity, or need to falsely accuse those around him or her. We cite *Cardall* simply as an illustration of a circumstance in which we have found a mental or emotional condition to be present and do not wish to limit the universe of possible mental or emotional conditions.

tainty "with respect to allegations that [B.W.] suffers from a disorder which affects her ability to accurately perceive, remember, or relate events in her life ... [or] that [B.W.] suffers from a disorder which would affect her ability to be trustworthy," the district court allowed in camera review of the records to "discover any statements concerning the complainant's feelings toward her parents." The court reasoned that Mr. Worthen had shown to a reasonable certainty that the records contained exculpatory evidence of B.W.'s feelings towards her parents by providing thirteen diary entries that "express[ed] the complainant's frustration with, and hatred toward, her parents."

¶ 26 The district court did not state whether the "feelings" were a manifestation of a mental or emotional condition, but only found that Mr. Worthen had shown to a reasonable certainty that B.W.'s records contained statements demonstrating her feelings towards her parents. While B.W. may indeed have a mental or an emotional condition that manifests itself through hatred of her parents and her propensity to lie, the district court did not incorporate such a finding into its order and the court of appeals erred in its failure to analyze this shortcoming.

¶ 27 B.W.'s communications to mental health professionals concerning her feelings towards her parents may provide valuable evidence of her motive. We conclude, however, that the fact that B.W. communicated her feelings to her therapist does not lead to the conclusion that B.W.'s mental or emotional condition is an element of Mr. Worthen's defense. Humans are from moment to moment in a state of one emotional feeling or another. While a mental or emotional condition encompasses a state of being that is broader than a diagnosable disorder, feelings themselves are not a mental or emotional condition contemplated under the rule. If feelings themselves were to constitute a mental or emotional condition, the exception to the psychotherapist-patient privilege would devour the privilege.

¶ 28 Having determined that the court of appeals was mistaken when it failed to address whether B.W.'s mental or emotional condition was an element of Mr. Worthen's defense, we address whether Mr. Worthen has met the requirements of rule 506(d)(1). We find that B.W.'s "frustration with, and hatred toward" her parents is an emotional condition contemplated by the rule.[5] The UNI discharge statements and journal entries presented to the district court by Mr. Worthen sufficiently supported his argument that B.W.'s emotional condition was an element of his defense that she had a specific motive to lie. B.W. demonstrated persistent hostility towards her parents and repeatedly expressed her desire to leave the home. While anger and hatred are "feelings" in the particular sense, the chronic and persistent nature of such feelings in the mental life of a person amount to a condition. We stress however that the fact that B.W. may have made statements to her therapist that simply conveyed her emotions or feelings does not by itself constitute a mental or emotional condition under the rule merely because those communications may be used for specific impeachment purposes.

**B.  The Court of Appeals Did Not Err When It Held That Evidence Which May Qualify as Impeachment Evidence May Also Qualify as an Element of a Claim or Defense**

▮▮▮▮  ¶ 29 The State argues that because Mr. Worthen's request for in camera review of B.W.'s mental health records is for the purpose of obtaining impeachment evidence, he has not met the rule 506(d)(1) requirements. Specifically, the State questions whether impeachment evidence can ever qualify as an element of a claim or defense under rule 506(d)(1). We will first discuss the meaning of "element of a claim or defense" under rule 506(d)(1) and whether impeachment evidence can be an element of a claim or defense within this rule.

---

5.  The State puts particular importance on the district court's statement that "[Mr. Worthen] has conceded that there is no reasonable certainty concerning the alleged victim's mental condition." Because rule 506(d)(1) mentions both mental conditions and emotional conditions, the concession that B.W. did not have a mental condition is not fatal to Mr. Worthen's request for in camera review.

### 1. An Element of a Claim or Defense Is a Necessary Argument to Interject Doubt Into the State's Burden to Prove Each Element of the Offense

¶ 30 The State argued, both to the court of appeals, and before us, that rule 506(d)(1) should only apply when the condition can be linked to a statutorily defined defense and the defendant has asserted such defense. *See* Utah Code Ann. §§ 76–2–301 to 407 (2008) (setting forth statutory defenses to criminal responsibility). The court of appeals rejected the State's argument and took a less formalistic position, holding that any argument that interjects doubts into the State's obligation to prove every element of the offense beyond a reasonable doubt qualifies as an element of a claim or defense under rule 506(d)(1). We affirm the court of appeals and reject the State's narrow definition.

¶ 31 In our system of justice, "a defendant in a criminal case bears no burden of persuasion." *State v. Spillers*, 2007 UT 13, ¶ 19, 152 P.3d 315. Subject to evidentiary restraints, a defendant may present evidence that casts doubt on the State's ability to prove all the elements of the crime. *See* Black's Law Dictionary 451–52 (8th ed.2004) (defining "defense" as, inter alia, "1. A defendant's stated reason why the . . . prosecutor has no valid case," and "2. A defendant's method and strategy in opposing the plaintiff or the prosecution."). An element of a claim or defense under rule 506(d)(1) therefore encompasses evidence that interjects reasonable doubt into the elements the State bears the burden to prove.

### 2. Rule 506(d)(1) Contemplates All Defenses of Which a Party's Mental or Emotional Condition Is an Element, Even If the Type of Evidence Presented Is Impeachment Evidence

¶ 32 The State argues that even if Mr. Worthen's defense is a defense in broad terms, an "I didn't do it" or "she's lying" defense cannot be a defense of which impeachment evidence is an element. The court of appeals concluded that because Mr. Worthen sought review of the records for evidence of B.W.'s motive, bias, or prejudice as opposed to evidence of her general trustworthiness, the requirements of rule 506(d)(1) were satisfied. *State v. Worthen*, 2008 UT App 23, ¶ 19, 177 P.3d 664.

¶ 33 The State suggests that impeachment evidence is only a part of a "defense strategy" and can never be an element of the defense. We acknowledge that our prior case law has obscured and not illuminated this topic. In *Blake*, we stated "[i]t is unlikely that impeachment evidence qualifies as an element of a claim or defense." 2002 UT 113, ¶ 19 n. 2, 63 P.3d 56. We declined to further probe the issue because the defendant in that case had "not shown with reasonable certainty that the records he [sought] contain[ed] exculpatory evidence." *Id.* In *Gonzales*, we further suggested that impeachment of the victim's credibility was not actually an element of an "I didn't do it" defense, but only "part of his defense strategy." 2005 UT 72, ¶ 43, 125 P.3d 878 (internal quotation marks omitted). In *Gonzales*, the defendant argued the victim's "relevant mental state to be an inability to tell the truth" and "because of the likelihood of finding exculpatory evidence that [the victim]'cannot be believed' in her mental health records, the defense was entitled to an in camera review." *Id.* ¶ 16. We again declined to thoroughly analyze the issue of what constitutes an element of a claim or defense because we determined that the fraudulent and flawed means by which the mental health records in that case were obtained resulted in their inadmissibility. *Id.* ¶ 43.[6]

¶ 34 The court of appeals' analysis indicated that our case law creates a distinction between "specific" impeachment evidence of motive, bias or prejudice and "general" impeachment evidence of the general credibility of the witness. On review of our case law, we find that the court of appeals misinterpreted *Gonzales* as holding that "general" impeachment evidence is not an element of a defense under rule 506(d)(1). Rather, Mr. Gonzales' articulated defense was similar to

---

**6.** The defense attorney in *Gonzales* used a flawed subpoena process to obtain privileged mental health records from UNI and did not seek in camera review of the records once he received them. 2005 UT 72, ¶¶ 44–45, 125 P.3d 878.

the defense Mr. Worthen has articulated and the defense articulated in *Cardall.* Mr. Gonzales argued in his brief to this court "that [the victim] had fabricated the allegations to prevent him from marrying [her mother]," that "[her] psychological disorders directly address her ability to accurately perceive reality and to tell the truth," and that she "had a history of telling lies" and has "engaged in illegal activity." Brief for Petitioner Add. D at 29. The factual differences between *Cardall* and *Gonzales* therefore do not create foundation upon which to erect a principled distinction between "specific" and "general" impeachment evidence. *See Cardall,* 1999 UT 51, ¶ 29, 982 P.2d 79 (stating the "focus of his defense was that [the victim] is a habitual liar, that she fabricated her story . . ., that she is mentally and emotionally unstable, and that the records show that on at least one previous occasion these psychological traits led her to lie about an attempted rape"). After careful review of the case law and arguments, we must conclude that our brief treatment of impeachment evidence under rule 506(d)(1) provides only non-binding dicta.

¶ 35 We hold therefore that the correct inquiry then becomes not whether the records may contain a certain type of impeachment evidence but whether the specifically pled defense renders a party's mental or emotional condition a necessary element to that defense. Communications made as a result of that condition are only subject to review under rule 506(d)(1) when the condition itself is an element of the defense.

¶ 36 There may be circumstances in which a defendant presents merely an "I didn't do it" or a "she's lying" defense in which impeachment evidence takes the form of a defense strategy rather than an element. We generally agree with the court of appeals determination that impeachment evidence that only challenges the general credibility of the witness, is likely not an element of any claim or defense contemplated under rule 506(d)(1). *See also Davis v. Alaska,* 415 U.S. 308, 311, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)

(distinguishing between general impeachment evidence and evidence that addresses possible biases, motives and prejudices in cases dealing with review of privileged juvenile record). Our holding today does not preclude a district court from using its discretion to deny in camera review in these instances.

¶ 37 Mr. Worthen's case, however, does not present such a set of circumstances. Mr. Worthen has argued that B.W. harbored extreme hatred towards her parents, which created a motive to fabricate allegations of abuse so that she would be removed from her parents' home. Mr. Worthen is not simply arguing "I didn't do it," but rather is making the claim that B.W. has a mental or emotional condition of extreme hatred, which has caused her to fabricate abuse allegations. Mr. Worthen's defense has narrowly defined B.W.'s motive to lie, not her general credibility as a witness, as a crucial element of his defense.

C. *The Court of Appeals Did Not Err by Holding That Mr. Worthen's Request for B.W.'s Mental Health Records Met the Reasonable Certainty Test*

¶ 38 The court of appeals held that Mr. Worthen met the stringent "reasonable certainty" test we have imposed on a rule 506(d)(1) inquiry. "[I]t is not enough [for the defendant] to show that the counseling records exist." *Blake,* 2002 UT 113, ¶ 19, 63 P.3d 56. Mr. Worthen must also show "with reasonable certainty, that the sought-after records actually contain 'exculpatory evidence . . . which would be favorable to his defense.'" *Id.* (quoting *Cardall,* 1999 UT 51, ¶ 30, 982 P.2d 79) (alteration in original). We have noted "[t]his is a stringent test, necessarily requiring some type of extrinsic indication that the evidence within the records exists and will, in fact, be exculpatory."[7] *Id.* In *Blake,* we likened "reasonable certainty" in sexual abuse cases to "the more stringent side of 'more likely than not.'" *Id.* ¶ 20.

¶ 39 We affirm the court of appeals' determination that Mr. Worthen's request shows "with reasonable certainty that exculpatory

---

7. Indeed, the difficulty in meeting the reasonable certainty test "is deliberate and prudent in light of the sensitivity of these types of records and the worsening of under-reporting problems in the absence of a strong privilege." *Blake,* 2002 UT 113, ¶ 19, 63 P.3d 56.

evidence exists [in the requested records that] would be favorable to his defense." *Cardall*, 1999 UT 51, ¶ 30, 982 P.2d 79. The court of appeals first began with a discussion of Mr. Worthen's particular defense and then analyzed whether the requested records exist and whether they contain exculpatory evidence favorable to Mr. Worthen's articulated defense. *Worthen*, 2008 UT App 23, ¶¶ 29–30, 177 P.3d 664. We agree that the court of appeals' approach applied the correct analytical framework here and reached the proper result.[8]

¶ 40 First, Mr. Worthen has sufficiently pled a defense that is amenable to a finding of exculpatory evidence in the requested records that would be favorable to that defense. As discussed in Part I(A), Mr. Worthen's defense is that B.W. harbored extreme hatred toward her parents, which created a motivation to falsely accuse Mr. Worthen so that she would be removed from the Worthens' home. Mr. Worthen's articulation of the defense differs from the defense in *Blake* that we declared did not qualify as a defense to which the reasonable certainty test could apply. In *Blake*, the defendant made a general request for all of the alleged victim's mental health records, arguing that:

> the mental health records . . . are important because it [sic] may have information about medication she's taking that effect [sic] her credibility; about whether she has recanted or not . . . also, she may have a mental illness where part of the diagnosis is chronic lying.

*Blake*, 2002 UT 113, ¶ 21, 63 P.3d 56. Mr. Worthen's defense and explanation for the requested in camera review, in contrast, is limited to a specific and narrow defense focused on B.W.'s extreme hatred.

¶ 41 Second, Mr. Worthen has shown with reasonable certainty that the requested records contain exculpatory evidence favorable to the proffered defense. In *Blake*, we explained that a request for in camera review "accompanied by specific facts justifying the review" may meet the reasonable certainty test. *Id.* ¶ 22. We also suggested, however,

that "when the request is a general one, such as the request in this case for any impeachment material that might happen to be found in the privileged records," it would be error for a district court to find that the defendant had met the reasonable certainty test and grant in camera review. *Id.* We noted that the specific facts required to meet the reasonable certainty test include, but are not limited to

> references to records of only certain counseling sessions, which are alleged to be relevant, independent allegations made by others that a victim has recanted, or extrinsic evidence of some disorder that might lead to uncertainty regarding a victim's trustworthiness.

*Id.*

¶ 42 We agree with the court of appeals that Mr. Worthen presented an appropriate amount of specific evidence to show to a reasonable certainty the requested records contained exculpatory evidence favorable to his defense. Mr. Worthen presented the district court thirteen journal entries that suggested B.W. hated the Worthens and wished to be removed from their home. These journal entries constitute extrinsic evidence that B.W.'s therapy records contain statements concerning her hatred of and frustration toward the Worthens. The UNI discharge summaries also document B.W.'s cognitive problems and propensity for misinterpretations. Furthermore, Mr. Worthen has narrowed his request to the time period between July and October 2005 and provided the district court with a calendar documenting B.W.'s therapy appointments to show that the requested records actually exist. We conclude Mr. Worthen met the reasonable certainty test.

## II. THE COURT OF APPEALS DID NOT ERR IN ITS CONCLUSION THAT THE MATERIALITY OF THE MENTAL HEALTH RECORDS IS A PREMATURE CONSIDERATION

¶ 43 The court of appeals held that an analysis of the materiality of the request-

---

**8.** Mr. Worthen's brief conflates the proper analytical sequence in a rule 506(d)(1) determination. Mr. Worthen argues that because he could show to a reasonable certainty that the requested records contained exculpatory evidence, B.W.'s mental or emotional condition was necessarily an element of Mr. Worthen's defense. We emphasize that a defendant must meet the plain language of rule 506(d)(1) independently of meeting the reasonable certainty test.

ed privileged records, including whether the records are cumulative of other admitted evidence, is properly made at the time of the in camera review by the trial court, not prior. We agree. In *Blake*, we stated after satisfaction of the reasonable certainty test, "the court would then conduct an in camera review for materiality." *State v. Blake*, 2002 UT 113, ¶ 23, 63 P.3d 56. The trial court must deem evidence material "where there is a reasonable probability that, if the evidence is disclosed to the defense, the result of the proceeding will be different." *Id.* (citing *State v. Cardall*, 1999 UT 51, 982 P.2d 79). The State argues that Mr. Worthen has a burden to show that the privileged records he seeks are material to his defense before the court can grant in camera review. The State also argues that an analysis of the materiality of B.W.'s mental records is not premature in this case because the health records are cumulative and do not hold any additional probative value to B.W.'s journals.

¶ 44 We will first discuss whether Mr. Worthen must show that the records contain material information and then discuss whether the possibility that the records are cumulative preclude in camera review.

*A. A Defendant Is Not Obligated to Prove Materiality of the Requested Records Prior to In Camera Review Above What Is Already Required by the Reasonable Certainty Test*

■■■ ¶ 45 The court of appeals held that a defendant "must show only that the evidence he seeks would be favorable to his defense; the issue of materiality is one for the trial court to determine when reviewing the records." *State v. Worthen*, 2008 UT App 23, ¶ 25, 177 P.3d 664. Although the court of appeals acknowledged that the defendant is not precluded from arguing the requested records are material, it held that the defendant bears no burden of proving materiality before in camera review is granted. *Id.* ¶ 25 n. 4.

¶ 46 The State points to cases in other jurisdictions for its argument that a defendant must make some sort of showing that

the requested privileged records are material even if the defendant has satisfied the reasonable certainty test. The State relies on other courts' mention of the importance of materiality in determining whether an exception to the psychotherapist-patient privilege applies.

¶ 47 Other jurisdictions have implemented the word "material" in describing the level to which a defendant must prove the privileged records contain the evidence sought. *See State v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 574 (1994) (stating, in camera review is appropriate "on a showing that the defendant has a good-faith belief, grounded on some demonstrable tact [sic], that there is a reasonable probability that the records are likely to contain material information necessary to the defense"); *State v. Cressey*, 137 N.H. 402, 628 A.2d 696, 703 (1993) ("The trial court must conduct an *in camera* review of the psychologist's privileged records should the defendant establish a reasonable probability that the records contain information relevant and material to his defense.").

¶ 48 On review of these cases, we find the use of the word "material" is meant to further articulate that respective jurisdiction's reasonable certainty test. In terms of the reasonable certainty test, "material" refers to evidence in the records that is exculpatory, or in other words, favorable to the defense. Given the stringency of the reasonable certainty test in Utah, Mr. Worthen is not under an obligation to show materiality apart from and in addition to the requirement that he show to a reasonable certainty that the records contain exculpatory evidence favorable to his defense in order to obtain in camera review. Certainly the State may challenge the materiality of any communications for purposes of contesting admissibility. Nonetheless, a defendant is not required to make an independent showing of materiality, prior to in camera review, separate from meeting the requirements of the reasonable certainty test to obtain in camera review.

*B. A Court Can Only Determine if the Requested Records Are Cumulative of Other Evidence After In Camera Review Takes Place*

■■■ ¶ 49 The State argues that the court of appeals erred in its conclusion that a

decision on whether the records are cumulative, and therefore immaterial, is premature. Although the State argued that the journal entries and other evidence already in Mr. Worthen's possession provide more than enough evidence of B.W.'s emotional state and motive to lie, the court of appeals reasoned that communications contained within the records may contain evidence that is independently probative of the wealth of evidence already in Mr. Worthen's possession. *Worthen,* 2008 UT App 23, ¶ 26, 177 P.3d 664. We agree.

¶ 50 Although communications in the requested records may be cumulative of the evidence already in Mr. Worthen's possession, the trial court can only make such a determination after the actual in camera review takes place. Even if the State is correct in its assertion that the requested records will reveal only cumulative information, there is also an equal likelihood that the records will contain independently probative information or probative information of a better quality. *See State v. Shiffra,* 175 Wis.2d 600, 499 N.W.2d 719, 724 (1993) (stating in camera review still allowable even though sexual abuse defendant was in possession of evidence that the alleged victim had psychiatric diagnoses, struggled with substance abuse, and had accused others in the past of sexual abuse).[9] Whether the requested records provide only cumulative evidence is a determination best left to the trial judge after review of the records.

## III. WE WILL NOT ADDRESS WHETHER THE COURT OF APPEALS DID OR DID NOT IMPROPERLY CONSIDER UTAH'S VICTIMS' RIGHTS AMENDMENT OR UTAH'S VICTIMS' RIGHTS STATUTORY SCHEME

¶ 51 The guardian ad litem and the amici curiae argue that the court of appeals erred by failing to address the constitutional and statutory rights of B.W. They argue that the court of appeals had a duty to consider B.W.'s rights by considering B.W.'s constitutional and statutory interest in non-disclosure of the requested records. The court of appeals' opinion does not address the Victims' Rights Amendment to the Utah Constitution or Utah's victims' rights statutory scheme and does not analyze the extent to which Utah law recognizing victims' rights is relevant to a trial court's evidentiary decisions. This was not error because the issues were not properly presented to the court of appeals.

¶ 52 The Victims' Rights Amendment grants victims of crimes the right "[t]o be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process." Utah Const. art. I, § 28(1)(a). The Rights of Crime Victims Act defines dignity as "treating the crime victim with worthiness, honor, and esteem"; fairness as "treating the crime victim reasonably, even-handedly, and impartially"; and respect as "treating the crime victim with regard and value." Utah Code Ann. § 77–38–2(2), (3), & (8) (2008).

¶ 53 The court of appeals' opinion does not address whether victims' rights protections should or must be taken into account when considering an exception to the victim's psychotherapist-patient privilege.

¶ 54 The amici curiae argues that such judicial silence violated Utah Code section 77–38–11, which states that "[a]n appellate court shall review all such properly presented issues." Utah Code Ann. § 77–38–11(2)(c) (2008). Reliance on section 77–38–11 as standing for the proposition that an appellate court must consider all arguments relating to victims' rights on appeal in its determination of an issue is misplaced. Section 77–

---

9. The State argues that the records can only contain information that is independently probative if the in camera review is for purposes of discovering psychiatric illnesses. The State cites *State v. Green,* a Wisconsin case, which held the defendant was required to show the requested privileged evidence was "independently probative" and "not cumulative." 253 Wis.2d 356,

646 N.W.2d 298, 311 (2002). The court held the defendant had not met this requirement because he was in possession of police and social services reports that showed the alleged victim had changed her story over time. *Id.* We decline to adopt such a narrow view of the application of rule 506(d)(1) and the function of in camera review.

38–11 relates to appeals made from an adverse ruling on a claim for injunctive relief, declaratory relief, or a writ of mandamus made to the court with proper jurisdiction, or of a "motion or request brought by a victim of a crime." *Id.* § 77–38–11(2)(b).[10] The court of appeals did not err by failing to include an analysis of the affect of the victims' rights amendment or statute because it appears from the record that no such appeal from an adverse ruling was made.

¶ 55 B.W.'s rights as a victim support considerable policy-based arguments for supporting evidentiary privileges. Indeed, in *State v. Blake* and *State v. Gonzales,* we discussed the problems associated with under-reporting among victims of sexual abuse and considerations of privacy when one seeks counseling for recovery. 2005 UT 72, ¶ 33, 125 P.3d 878 (victims rights implicated when victim did not receive proper notice that her counseling records had been subpoenaed); 2002 UT 113, ¶ 16, 63 P.3d 56. These strong policy considerations however do not mandate analysis from the court of appeals if the issue has not been properly preserved for appellate review.

### CONCLUSION

¶ 56 We hold that the court of appeals erred in failing to analyze whether B.W.'s mental or emotional condition was an element of Mr. Worthen's claim or defense, but conclude that in this case B.W.'s emotional condition of extreme hatred and frustration towards the Worthens is an element of Mr. Worthen's claim or defense. We also hold that the court of appeals did not err in its determination that Mr. Worthen met the reasonable certainty test and was not required to make a separate showing that the requested records would provide material and non-cumulative evidence. Additionally, we hold that the impact of the Victims' Rights Amendment and the Rights of Crime Victims Act was not properly presented for appeal to the court of appeals. Therefore, we affirm the court of appeals' determination that Mr. Worthen is entitled to in camera review of

B.W.'s mental health records for statements of B.W.'s feelings towards her parents.

¶ 57 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.

10. The 2009 amendments to section 78–38–11(2)(b) deleted this language. We use the 2008 version because it was the version in effect at the time of the appeal.