2013 UT App 219

# THE UTAH COURT OF APPEALS

LARRY MCCLOUD,
Petitioner and Appellee,
*v.*
STATE OF UTAH,
Respondent and Appellant.

Opinion
No. 20110794-CA
Filed September 6, 2013

Fourth District, Heber Department
The Honorable Donald J. Eyre Jr.
No. 070500212

John E. Swallow, Brett J. DelPorto, and
Brandon Simmons, Attorneys for Appellant
Brent A. Gold and Andrew J. Parnes, Attorneys for
Appellee

JUDGE WILLIAM A. THORNE JR. authored this Opinion, in which
JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN
concurred.

THORNE, Judge:

¶1 This matter originated in the district court in 2007 when appellee Larry McCloud sought postconviction relief from his 2001 convictions for sexually abusing a child (Victim). Upon McCloud's motion, the district court authorized the issuance of subpoenas for the production and in camera review of certain records from Victim's treatment with various medical and psychiatric care providers. The State brings this interlocutory appeal challenging the district court's order authorizing the subpoenas. We reverse the district court's order and remand this matter for further proceedings.

BACKGROUND

¶2     In 2000, then sixteen-year-old Victim reported that McCloud had repeatedly sexually abused her throughout her life. McCloud was charged with multiple sex offenses and tried before a jury in 2001. At McCloud's trial,[1] Victim testified that the abuse began when she was five years old, describing a 1989 incident in which McCloud had asked her to touch him while showering. She further testified that McCloud had committed multiple sexual acts upon her between 1991 and 1994. McCloud also testified at trial, denying Victim's allegations and presenting evidence that the abuse could not have occurred on some of the dates claimed because McCloud did not have access to Victim on those dates. In rebuttal testimony, Victim stood by her allegations of abuse but acknowledged that she may have been confused about the specific dates that the abuse occurred.

¶3     The jury convicted McCloud of one count of aggravated sexual abuse of a child and three counts of sodomy upon a child. On direct appeal, this court reduced the aggravated sexual abuse of a child conviction to the lesser included offense of sexual abuse of a child. However, we otherwise affirmed McCloud's convictions. *See State v. McCloud*, 2005 UT App 466, ¶ 27, 126 P.3d 775.

¶4     In 2007, McCloud filed a petition for relief in the district court pursuant to Utah's Post-Conviction Remedies Act. *See* Utah Code Ann. §§ 78B-9-101 to -405 (LexisNexis 2012 & Supp. 2013). After a series of summary judgment motions and resulting amendments to McCloud's petition, three arguments for relief remained. One of these arguments was that McCloud had received ineffective assistance of appellate counsel following his 2001 trial because appellate counsel had failed to argue that McCloud's trial

---

[1]The record of the 2001 trial is not before us, and we rely on the parties' briefs for background information pertaining to events that occurred at that trial.

counsel provided ineffective assistance by failing to obtain records from various doctors and therapists to whom Victim had disclosed the abuse.[2]

¶5   In 2011, McCloud renewed a previous discovery motion for the issuance of subpoenas duces tecum directing the production of Victim's records from various doctors and therapists for an in camera review by the district court. McCloud's discovery motion asserted that the records "pertain to a substantive claim in the Petition" and "are necessary for the full presentation of the prejudice prong of the Sixth Amendment claim in this case." The State opposed the motion, as did Victim, who had intervened in the case.

¶6   After a hearing, the district court granted McCloud's motion. The district court's order stated,

> The Court finds that Petitioner has met the requirements of Utah law concerning the disclosure of privileged medical records. Specifically, the Court finds that billing statements for the victim's treatment in 1989 . . . , diary entries from [the victim's] grandmother in 1989, the victim's testimony at the preliminary hearing and at trial, and billing statements for treatment by numerous providers during the period from 1996 through 2000 established with reasonable certainty that records from the victim's treatment providers contain evidence of multiple disclosures of abuse by the victim. Inconsistencies in said disclosures may have

---

[2]McCloud's other remaining claims—that his prior appellate counsel provided him with ineffective assistance by failing to raise available Sixth Amendment arguments and failing to make additional arguments about his trial counsel's effectiveness—are not before us on this interlocutory appeal.

provided a defense to the petitioner at the time of trial. Petitioner has therefore met the requirements for disclosure under rule 506, Utah Rules of Evidence, as interpreted by the Utah Supreme Court, of any records of counselors from 1989 about disclosures of abuse, and of any records of psychologists, psychiatrists, and biofeedback counselors from 1998 through 2000 about disclosures of abuse.

The State petitioned this court for interlocutory review of the district court's order, and we granted the State's review petition.

ISSUES AND STANDARDS OF REVIEW

¶7    The State argues that Victim's records are protected by Utah's physician and mental health therapist–patient privilege (the patient privilege), *see generally* Utah R. Evid. 506, and that the district court erred when it concluded that McCloud had met the standards for obtaining the production and an in camera review of those records. "'The existence of a privilege [or an exception thereto] is a question of law,' which we review for correctness." *State v. Worthen*, 2008 UT App 23, ¶ 9, 177 P.3d 664 (alteration in original) (quoting *State v. Blake*, 2002 UT 113, ¶ 6, 63 P.3d 56), *aff'd*, 2009 UT 79, 222 P.3d 1144.

ANALYSIS

¶8    The State challenges the district court's conclusion that McCloud established his entitlement to the production and in camera review of Victim's records. Specifically, the State argues that the district court erred in concluding that the possibility of inconsistent statements by Victim to her various doctors, therapists, and counselors constituted an exception to her patient privilege. *See* Utah R. Evid. 506(d)(1)(A) (stating that no privilege exists in

proceedings where a patient's condition is an element of a claim or defense). The State further argues that McCloud failed to provide adequate extrinsic evidence to demonstrate the required "reasonable certainty" that Victim's records contained exculpatory evidence. *See State v. Worthen*, 2009 UT 79, ¶ 38, 222 P.3d 1144 (citation and internal quotation marks omitted).

## I. Existence of a Physical, Mental, or Emotional Condition

¶9      Rule 506 of the Utah Rules of Evidence provides that "[a] patient has a privilege, during the patient's life, to refuse to disclose and to prevent any other person from disclosing information that is communicated in confidence to a physician or mental health therapist for the purpose of diagnosing or treating the patient." Utah R. Evid. 506(b). However, rule 506 contains certain exceptions to the patient privilege, one of which is rule 506(d)(1)(A)'s directive that "[n]o privilege exists . . . [f]or communications relevant to an issue of the physical, mental, or emotional condition of the patient . . . in any proceeding in which that condition is an element of any claim or defense." *Id.* R. 506(d)(1)(A). Rule 506(d)(1)(A) was the only privilege exception argued to the district court, and the district court apparently relied on that exception when it concluded that inconsistencies in Victim's statements to her various care providers qualified as an exception to the patient privilege because they may have provided McCloud with a defense at his 2001 trial.

¶10     In determining the applicability of rule 506(d)(1)(A), a district court must first "determine whether the patient suffers from a physical, mental, or emotional *condition* as opposed to mental or emotional problems that do not rise to the level of a condition." *State v. Lenkart*, 2011 UT 27, ¶ 48, 262 P.3d 1. A qualifying condition "is not transitory or ephemeral." *Worthen*, 2009 UT 79, ¶ 21. Rather, a condition must be "a state that persists over time and significantly affects a person's perceptions, behavior, or decision making in a way that is relevant to the reliability of the person's testimony." *Id.*

¶11 The district court did not expressly identify a specific "physical, mental, or emotional condition" to support its ruling. Rather, the district court stated only that "[i]nconsistencies in [Victim's] disclosures may have provided a defense to the petitioner at the time of trial." We cannot agree with the district court that the possibility that patient records contain inconsistent statements made by the patient qualifies as an exception under rule 506(d)(1)(A).

¶12 The possibility that Victim may not have been entirely consistent in her statements to her care providers over a period of years does not, in and of itself, constitute "a state that . . . significantly [affected her] perceptions, behavior, or decision making." *Worthen*, 2009 UT 79, ¶ 21. We see no indication in the record that McCloud alleged or the district court considered some underlying condition of Victim's that caused or could be demonstrated by any such inconsistencies. *Cf. id.* ¶ 28 (concluding that the victim's "'frustration with, and hatred toward' her parents is an emotional condition contemplated by the rule"); *State v. Cardall*, 1999 UT 51, ¶ 29, 982 P.2d 79 (finding a sufficient condition where victim was a "habitual liar" and was "mentally and emotionally unstable" and "on at least one previous occasion these psychological traits led her to lie about an attempted rape"). The district court's stated rationale suggests only that inconsistent statements were possible because Victim had spoken to multiple caregivers over a lengthy period of time. While that possibility certainly exists, it does not constitute a physical, mental, or emotional *condition* for purposes of rule 506(d)(1)(A).

¶13 In order to grant McCloud's discovery motion under rule 506(d)(1)(A), the district court was required to make an adequately supported finding that Victim suffered from a physical, mental, or emotional condition of relevance to McCloud's 2001 defense and current ineffective assistance of counsel claim. Without such a finding, the district court's ruling that McCloud is entitled to an in camera review of Victim's confidential records is in error. *See State v. Worthen*, 2009 UT 79, ¶ 19, 222 P.3d 1144.

## II. The "Reasonable Certainty" Test

¶14    The State also argues that McCloud failed to provide the district court with extrinsic evidence demonstrating a reasonable certainty that Victim's records contain exculpatory information. A party seeking to obtain in camera review of records governed by rule 506 "must show with reasonable certainty that the records contain exculpatory evidence that will be favorable to [a claim or] defense." *State v. King*, 2012 UT App 203, ¶ 32, 283 P.3d 980 (citation and internal quotation marks omitted).

> This is a stringent test, necessarily requiring some type of extrinsic indication that the evidence within the records exists and will, in fact, be exculpatory. The difficulty in meeting this test is deliberate and prudent in light of the sensitivity of these types of records and the worsening of under-reporting problems in the absence of a strong privilege.

*State v. Blake*, 2002 UT 113, ¶ 19, 63 P.3d 56 (footnote omitted). The types of extrinsic evidence that may suffice to satisfy the reasonable certainty test "might include references to records of only certain counseling sessions, which are alleged to be relevant, independent allegations made by others that a victim has recanted, or extrinsic evidence of some disorder that might lead to uncertainty regarding a victim's trustworthiness." *Id.* ¶ 22.

¶15    Here, McCloud presented the district court with several different types of extrinsic evidence to show that Victim's records would contain statements pertaining to the abuse. He provided billing records showing the specific times that Victim had met with various care providers. He also presented a March 13, 1989 diary entry, allegedly written by Victim's grandmother, stating that Victim told her therapist that McCloud had "touched her (while in the pool) where he shouldn't." Finally, he relied on Victim's own statements from the preliminary hearing and trial indicating that she had revealed his abuse to several care providers.

¶16   This extrinsic evidence is likely sufficient to demonstrate a reasonable certainty that Victim did disclose McCloud's abuse to one or more care providers. But that alone is not enough to overcome Victim's patient privilege. Rather, McCloud was required to "show with reasonable certainty that the records contain *exculpatory evidence*." *King*, 2012 UT App 203, ¶ 32 (emphasis added) (citation and internal quotation marks omitted).

¶17   In this case, McCloud alleges that the existence of inconsistent statements that Victim made to her various caregivers about McCloud's abuse constitutes the required exculpatory evidence. But there is nothing in McCloud's extrinsic evidence to suggest that Victim actually made any inconsistent statements about whether the abuse had in fact occurred. To the contrary, the extrinsic evidence presented by McCloud demonstrates only that Victim revealed the abuse to multiple care providers over the course of several years. We cannot characterize Victim's repeated statements that McCloud sexually abused her as exculpatory evidence, and the mere possibility that the multiple reports contained material inconsistencies is too speculative to meet the "reasonable certainty" requirement.

¶18   Our supreme court has mandated a "strong [patient] privilege" in order to respect "the sensitivity of these types of records" and avoid "the worsening of under-reporting problems." *State v. Worthen*, 2009 UT 79, ¶ 38 n.7, 222 P.3d 1144 (citation and internal quotation marks omitted). In furtherance of this strong privilege, the supreme court has mandated the "stringent test" of showing through extrinsic means a "reasonable certainty . . . that the evidence within the records exists and will, in fact, be exculpatory." *Id.* ¶ 38 (citation and internal quotation marks omitted). The extrinsic evidence that McCloud provided to the district court fails to demonstrate a reasonable certainly that Victim's confidential records contain exculpatory evidence. This failure of proof provides us with a second reason to conclude that the district court erred in ruling that McCloud is entitled to an in camera review of Victim's confidential records.

CONCLUSION

¶19     We conclude that the district court erred when it ruled that McCloud had established an exception to Victim's patient privilege. The mere possibility of inconsistencies in Victim's statements to her various doctors and therapists in no way establishes—without impermissible speculation—the physical, mental, or emotional condition required by rule 506(d)(1)(A) of the Utah Rules of Evidence. Further, McCloud failed to provide extrinsic evidence demonstrating a reasonable certainty that Victim's records contain exculpatory material. For these reasons, we reverse the district court's order authorizing the issuance of subpoenas for Victim's confidential records and remand this matter for further proceedings.[3]

————————

[3]McCloud argues that we should affirm the district court's order because Victim's 2001 trial testimony waived her patient privilege and because preventing his access to the records would violate his state and federal constitutional rights. McCloud raised these issues in the district court, but the district court did not rule on them. We do not consider these arguments to be well developed in light of the interlocutory posture of this appeal, and we decline to address them at this time. *Cf. Gunn Hill Dairy Props., LLC v. Los Angeles Dep't of Water & Power*, 2012 UT App 20, ¶¶ 17–24, 269 P.3d 980 (discussing this court's "discretion to carefully tailor the scope of interlocutory review").