**2018 UT App 230**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CALVIN ROGER BELL,
Appellant.

Opinion
No. 20161044-CA
Filed December 20, 2018

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 141905701

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY[1]
concurred.

HARRIS, Judge:

¶1    A jury convicted Calvin Roger Bell of sexually abusing his girlfriend's three-year-old child (Child). Bell appeals his conviction, asserting that the trial court made two erroneous evidentiary rulings that altered the outcome of his trial. We are unpersuaded by Bell's arguments, and affirm his convictions.

¶2    In the summer of 2013, while her mother (Mother) was in a residential drug treatment program, Child disclosed to a staff

---

1. Judge Kate A. Toomey has resumed the use of her birth name and is now known as Judge Kate Appleby.

member there that "her dad" had been "playing sexy" with her. Child was four years old when she made this disclosure. Child had had little contact with her biological father, and the man she referred to as "her dad" was Bell, Mother's live-in boyfriend. Shortly thereafter, Mother arranged for Child Protective Services (CPS) to interview Child. However, Child initially refused to talk to the detective (Detective) assigned to interview her "because he was a boy." Mother later arranged for Child to receive counseling, specifically counseling for sexual abuse and trauma.

¶3 In January 2014, Child disclosed to Mother that Bell had once shown her a pornographic video. At that point, Mother asked CPS to interview Child again, and this time Child agreed to speak to Detective. Child described, in detail, the pornographic video that she said Bell showed her. Child also told Detective that "Dad played sexy with me, and I don't like it." Specifically, Child described two incidents, one in which she claimed that Bell put his "weenie" on her "no-no" where "pee" comes out, and another in which she claimed that Bell "pulled down [her] pants" and put his finger "under [her] bum."

¶4 After interviewing Child, Detective interviewed Bell, who confirmed that he lived with Mother and Child around the time of the alleged abuse. Bell told Detective that Child called him "Daddy" and that he was the "father figure" in the house. He also admitted to having pornography on his phone and his laptop, and told Detective that he and Mother had created pornographic videos of themselves and that Child had "busted" him and Mother "having sex a couple of times." But Bell denied ever purposefully showing pornography to Child and vehemently denied her other allegations of sexual abuse.

¶5 Based on Child's statements, the State charged Bell with one count of rape of a child, a first-degree felony; one count of aggravated sexual abuse of a child, a first-degree felony; and one count of dealing in materials harmful to a minor by an adult, a third-degree felony.

¶6 Prior to trial, Bell filed a motion seeking production of Child's therapy records. Bell noted that Child had undergone therapy between the time of her first meeting with Detective (when she refused to speak with him) and her second meeting with Detective (when she agreed to be interviewed and identified Bell as her abuser), and argued that Child must have been coached during therapy. The State opposed the motion, arguing that Bell had not met his burden of showing that the records were reasonably certain to contain exculpatory information. The trial court denied Bell's motion, stating that his argument "amounts to no more than speculation."

¶7 Also prior to trial, the State filed a notice of its intent to introduce the video recording of Child's interview with Detective, pursuant to rule 15.5 of the Utah Rules of Criminal Procedure.[2] Bell objected, arguing that the State had not met the requirements of rule 15.5, and asserting that introduction of the recording would violate his Sixth Amendment right to confront witnesses. After a hearing, the court ruled that the recording complied with rule 15.5, and that confrontation was not an issue so long as Child was available to be cross-examined at trial.

---

2. Rule 15.5 allows the admission upon motion, in a "case concerning a charge of child abuse or of a sexual offense against a child," of an "oral statement of a victim or other witness younger than 14 years of age which was recorded prior to the filing of an information or indictment," so long as the movant can demonstrate "good cause" as well as the existence of eight other specific requirements. *See* Utah R. Crim. P. 15.5(a). Among other particulars, the rule requires that both the child and the person who conducted the interview be available for cross-examination, that the recording not have been altered, and that "the court views the recording before it is shown to the jury and determines that it is sufficiently reliable and trustworthy and that the interest of justice will best be served by admission of the statement into evidence." *Id*. R. 15.5(a)(8).

¶8     At trial, as its first witness, the State called Child to testify in person. Child identified Bell and testified that Bell had lived with her and Mother and that she had called him "Daddy." Child described how Bell had shown her a pornographic video, describing the video in similar detail as she had in her interview with Detective. Child then stated that after the video, Bell "took off his clothes, and then . . . he went up and down on me." Child also described an incident with Bell where "I was on his lap. He put his finger like under my butt, and then, like, did his finger like this," making a hooking or beckoning motion. After the State's direct examination of Child, Bell was able to cross-examine Child without limitation from the court.

¶9     The State called Detective as its final witness. Detective testified that, at their first meeting in the summer of 2013, Child did not want to talk to him, so he did not interview her that day, but that at their second meeting, in January 2014, she was willing to talk. Detective described this second interview, and the State asked the court for permission to play the video recording of the interview. Bell renewed his previous objection to the recording's admission, but did not make any new objections. Over Bell's renewed objection, the trial court allowed the State to play the video recording of Child's interview.

¶10    Detective also testified about his interview with Bell, and described some of the questions he had posed and some of the answers Bell had given. The trial court denied Bell's request to play for the jury an audio recording of Bell's interview with Detective. On cross-examination, however, the court allowed Bell's counsel wide latitude to read from the transcript of the interview, and counsel asked Detective about many of the questions he posed and about Bell's responses. In particular, Bell's counsel elicited from Detective the fact that Bell had vehemently denied Child's accusations of sexual abuse.

¶11    After Detective's testimony, the State rested, and Bell took the stand in his own defense and as his sole witness. Bell again denied that he had ever sexually abused Child or showed her

pornography. The jury, after deliberation, convicted Bell of aggravated sexual abuse of a child and dealing in materials harmful to a minor, but acquitted him of rape of a child.

¶12 Bell now appeals, and asks us to consider two issues.[3] First, he argues that the trial court erred when it declined to conduct an in camera[4] review of Child's therapy records under rule 506 of the Utah Rules of Evidence. "The existence of a privilege or an exception thereto is a question of law, which we review for correctness." *McCloud v. State*, 2013 UT App 219, ¶ 7, 310 P.3d 767 (quotation simplified). Second, Bell argues that the trial court erred in admitting into evidence the video recording of Child's interview with Detective, both under the Confrontation Clause of the United States Constitution, as interpreted by *Crawford v. Washington*, 541 U.S. 36 (2004), and because allowing the State to present the recorded interview to the jury *after* Child had already testified subjected him to a "double whammy" that had a "double-barreled impact on the jury." Whether hearsay is admissible under *Crawford* is a

---

3. In his briefing on appeal, Bell initially raised a third issue, namely, whether the trial court violated rule 106 of the Utah Rules of Evidence when it refused to allow him to play for the jury the audio recording of his interview with Detective. At oral argument, however, Bell acknowledged that this argument is foreclosed by the Utah Supreme Court's recent opinion in *State v. Sanchez*, 2018 UT 31, 422 P.3d 866, where the court stated that "mere testimony about a conversation that happened to also be recorded is insufficient to trigger rule 106." *Id.* ¶ 23. Accordingly, we do not discuss this issue further.

4. "In camera" is a term that means "in the judge's private chambers" or "in the courtroom with all spectators excluded." *See State v. Peraza*, 2018 UT App 68, ¶ 8 n.4, 427 P.3d 276 (quotation simplified), *cert. granted*, 429 P.3d 460 (Utah 2018). In essence, in camera review refers to a private examination of documents by a judge out of the view of the parties.

question of law reviewed for correctness. *State v. Rhinehart*, 2006 UT App 517, ¶ 8, 153 P.3d 830. And "[w]hether the trial court correctly admitted the videotaped interviews into evidence pursuant to rule 15.5 [of the Utah Rules of Criminal Procedure] is a question of law that we review for correctness." *State v. Cruz*, 2016 UT App 234, ¶ 16, 387 P.3d 618.

¶13 A defendant seeking in camera review of a victim's privileged therapy records under rule 506(d)(1) of the Utah Rules of Evidence must convince the trial court of three things: first, that the victim "suffers from a physical, mental, or emotional condition"; second, that the condition is "an element of any claim or defense" raised by the parties; and third, that there is a "reasonable certainty that the mental health records will contain exculpatory evidence favorable to the defense." *State v. J.A.L.*, 2011 UT 27, ¶ 48, 262 P.3d 1 (quotation simplified); *see also* Utah R. Evid. 506(d)(1); *McCloud*, 2013 UT App 219, ¶¶ 10, 14. Even assuming, without deciding, that Bell could meet the first two requirements, Bell's argument founders on the third, because he cannot demonstrate a "reasonable certainty" that the sought-after records contain exculpatory evidence.[5]

¶14 The "reasonable certainty" requirement "is a stringent test, necessarily requiring some type of extrinsic indication" that

---

5. In response to Bell's argument that Utah's "reasonable certainty" test for obtaining copies of a victim's privileged therapy records is too strict and inconsistent with *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), we note that we are duty-bound to follow the mandates of our state supreme court, especially when our supreme court is interpreting the Utah (as opposed to the Federal) Rules of Evidence. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." (quotation simplified)). If Bell believes that the "reasonable certainty" test is inappropriate, he is free to address that question to the Utah Supreme Court.

the victim's records contain exculpatory evidence. *McCloud*, 2013 UT App 219, ¶ 14 (quotation simplified). Indeed, "reasonable certainty" lies "on the more stringent side of 'more likely than not.'" *State v. Blake*, 2002 UT 113, ¶ 20, 63 P.3d 56. "The difficulty in meeting this test is deliberate and prudent in light of the sensitivity of these types of records and the worsening of under-reporting problems in the absence of a strong privilege." *Id.* ¶ 19. As examples of the sort of "extrinsic indication" that would satisfy the test, our supreme court has identified "independent allegations made by others that a victim has recanted, or extrinsic evidence of some disorder that might lead to uncertainty regarding a victim's trustworthiness." *Id.* ¶ 22; *see also State v. Worthen*, 2009 UT 79, ¶¶ 39–42, 222 P.3d 1144 (determining that a defendant had met the test when he produced other medical records as well as the victim's own journal entries that indicated that the victim held an extreme bias against the defendant).

¶15   Bell provides nothing close to the amount of extrinsic evidence required to meet the "reasonable certainty" standard. Indeed, he relies on no extrinsic evidence at all. Instead, he merely asserts that, because Child initially would not speak to Detective, then underwent therapy, and then later spoke with Detective, a "reasonable likelihood exists that something in the therapy" would be exculpatory and that "[w]hatever intervened during [therapy] is just as likely to have led to information which is exculpatory as it is to that which is inculpatory." This is insufficient. The fact that a victim was reluctant to speak to law enforcement before therapy but less reluctant after therapy does not necessarily raise doubts about the victim's trustworthiness, and certainly does not indicate a "reasonable certainty" that something untoward occurred during the therapy sessions. We therefore reject Bell's first argument.

¶16   Bell's next contention is that the trial court erred when it allowed the State to play for the jury the video recording of Child's interview with Detective. Bell makes two arguments in this regard. First, he asserts that the court's decision to allow

introduction of the recorded interview violated his rights under the Confrontation Clause. The Sixth Amendment of the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In this case, however, Bell had the opportunity to confront and cross-examine Child. The State called Child as its first witness, and Bell had full opportunity to cross-examine Child following the State's direct examination. Bell offers no indication that he asked for permission to re-cross Child after the interview recording was played for the jury; he certainly does not assert that he was denied an opportunity to ask Child questions at trial about the recorded interview. Under these circumstances, Bell's rights under the Confrontation Clause have not been violated; indeed, *Crawford* itself makes clear that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements" and "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9; *see also Cruz*, 2016 UT App 234, ¶ 29 (stating that "one who chooses not to cross-examine a witness cannot complain that he was denied his right to cross-examine or confront the witness").

¶17 Finally, Bell argues that the trial court subjected him to a "double whammy" by allowing the State to play the recorded interview for the jury *after* Child had already testified live. Bell points out that part of the justification for allowing recorded interviews of child witnesses to be played for juries is to spare the child witness the trauma of testifying again, and notes that this justification is not present where the child witness has already testified. But like the defendant in *State v. Burnside*, 2016 UT App 224, 387 P3d 570, Bell did not raise this specific objection below. *See id.*, ¶¶ 9, 44–49 (the State called the victim to testify first, then later during the interviewer's testimony the State played the entire recorded interview, and the defendant "objected only to the quality of the recording," and as a result we reviewed the so-called "double whammy" issue only for plain

error). "In order to preserve an issue for appeal, it must be specifically raised . . . to a level of consciousness before the trial court so as to give the trial court an opportunity to address the claimed error, and if appropriate, correct it." *State v. Bruun*, 2017 UT App 182, ¶ 37, 405 P.3d 905 (quotation simplified). Bell's pre-trial objections to the video interview were based on the Confrontation Clause, and on an assertion that the video recording did not comply with the requirements of rule 15.5 of the Utah Rules of Criminal Procedure. Bell did not give the trial court an opportunity to rule on his specific "double whammy" objection. *See State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867 ("[I]f a party makes an objection at trial based on one ground, this objection does not preserve for appeal any alternative grounds for objection."). If a defendant "did not preserve his claims before the trial court, he must establish plain error, ineffective assistance of counsel, or exceptional circumstances to warrant review by this court." *State v. Kozlov*, 2012 UT App 114, ¶ 28, 276 P.3d 1207. But in this case, Bell does not ask us to review this issue for plain error, ineffective assistance of counsel, or exceptional circumstances, and we therefore decline to address any such arguments.[6] *See State v. Morris*, 2017 UT App 112, ¶ 12 n.5, 400 P.3d 1183.[7]

¶18   Affirmed.

———————

6. We also note that, in *Burnside*, we determined that the trial court had not plainly erred under similar circumstances by allowing the presentation of a video-recorded interview *after* the victim had already testified. *See State v. Burnside*, 2016 UT App 224, ¶ 48, 387 P.3d 570.

7. Bell also asks us to apply the cumulative error doctrine, but such an argument is only considered "when this court has determined that multiple errors occurred below." *State v. King*, 2017 UT App 43, ¶ 15, 392 P.3d 997. Because we find no error in the trial court proceedings, we need not further address Bell's cumulative error argument.