*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 38**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

CALVIN ROGER BELL,
*Petitioner.*

No. 20190043
Heard December 11, 2019
Filed June 23, 2020

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Richard D. McKelvie
No. 141905701

Attorneys:

Sean D. Reyes, Att'y Gen., Jonathan S. Bauer, Asst. Solic. Gen.,
Salt Lake City, for respondent

Herschel Bullen, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1   This case concerns a criminal defendant's request to view
a sexual abuse victim's privileged mental health therapy records.
Mr. Calvin Roger Bell was accused of sexually abusing his
girlfriend's three-year-old child (Child). Before trial, he requested

limited access to Child's privileged mental health therapy records, which request the district court denied.[1] We affirm because Mr. Bell fails to demonstrate that an exception to the mental health therapist-patient privilege exists under Utah Rule of Evidence 506. But even though we affirm the denial of Mr. Bell's request, we do note that Mr. Bell raises important constitutional and policy concerns regarding a criminal defendant's access to records that may contain exculpatory evidence, and so we refer rule 506 to our rules committee for review.

## Background

¶2    When Child was three years old, Mr. Bell dated Child's mother (Mother). Mr. Bell moved in with Mother and Child in November 2011, and the three lived together intermittently until January 2013, when Child was placed in a foster home. At that time, Mother entered a residential substance abuse treatment center at House of Hope. Child joined Mother there in May 2013.

¶3    While living at House of Hope, Child disclosed to a staff member that Mr. Bell, whom she referred to as "dad," "was playing sexy" with her. The director reported this to Mother, and together they contacted Child Protective Services (CPS) to report the alleged abuse. After Mother reported the alleged abuse, in August 2013, a detective interviewed Child about her statement to the House of Hope staff member. As part of interview protocol, a detective asked Child if she would "promise to tell [him] the truth today?" Child told the detective that "no, she didn't want to talk." The detective then ended the interview and informed Mother it was not uncommon for children to refuse to talk. He encouraged Mother to have Child continue therapy. And he told Mother that

---

[1] Mr. Bell specifically requested that the district court review Child's records in camera and disclose all material information that would support his defense. In camera review is a process by which a judge reviews privileged documents privately and decides what, if any, information may be disclosed to the criminal defendant. The limited disclosure of privileged records to a judge for review "represents the most effective and sensitive balance between" a patient's privacy and a "defendant's trial rights." *State v. Cramer*, 2002 UT 9, ¶ 22, 44 P.3d 690 (quoting *State v. Slimskey*, 779 A.2d 723, 732 n.9 (Conn. 2001)). We refer to Mr. Bell's request as a limited review of Child's records throughout this opinion.

he would schedule another interview with Child if Child became more comfortable and wanted to talk about the alleged sexual abuse.

¶4 Mother arranged sexual abuse counseling for Child at House of Hope. About five months after the initial interview with the detective, Child informed Mother that Mr. Bell had shown her a pornographic video. Mother contacted CPS again, and Child agreed to talk to the detective in January 2014. During the second interview, Child told the detective about details of the pornographic video, and described two incidents of sexual abuse—first, she stated that Mr. Bell put his "weenie" on her "no-no" where "pee" comes out, and second, she stated that, while on Mr. Bell's lap, he pulled down Child's pants and put his finger "under [her] bum."

¶5 Based on Child's allegations, the State charged Mr. Bell with (1) rape of a child;[2] (2) aggravated sexual abuse of a child;[3] and (3) dealing in materials harmful to a minor by an adult.[4] Before trial, Mr. Bell filed a motion to produce Child's mental health therapy records under Utah Rule of Criminal Procedure 14(b)(1). He specifically asked the district court to "order the [S]tate to produce for [in] camera review the therapy records of [Child] from the House of Hope or any collateral agencies addressing therapy related to neglect and/or abuse of [Child] from January 1, 2010 to May 8, 2014." He sought documentation of "therapeutic techniques and strategies used in treating [Child], names and contact information of all therapist[s] and case manager[]s working with [Child from January 1, 2010 to May 8, 2014] and all progress notes and statements regarding abuse."

¶6 Mr. Bell made two arguments in support of his assertion that he was entitled to Child's mental health therapy records under the Due Process Clause of the Fourteenth Amendment. First, he argued that the "records sought cont[ain] exculpatory evidence which would be favorable to the defense." Second, he argued the records are "material" because the case turns on Child's "credibility" due to her "age" and "suggestibility."

---

[2] UTAH CODE § 76-5-402.1.

[3] *Id.* § 76-5-404.1(4).

[4] *Id.* § 76-10-1206.

Mr. Bell alleged that he needed the records to determine if the "therapeutic intervention" between her initial interview with Detective (when Child would not discuss the sexual abuse), and her second interview (when Child discussed the sexual abuse that resulted in charges against Mr. Bell), "tainted [Child's] testimony."

¶7 The State opposed Mr. Bell's motion for production of Child's mental health therapy records. It argued that not only did the State not possess the records, but that the mental health therapy records sought by Mr. Bell were privileged under Utah Rule of Evidence 506. In addition, the State argued that Mr. Bell failed to provide sufficient evidence that the exception under rule 506(d)(1)(A) applied to the facts of his case. To establish an exception to the mental health therapist-patient privilege, the State argued Mr. Bell needed to convince the district court that Child had (1) a "physical, mental or emotional condition" that was (2) "an element of any claim or defense."[5] And, the State argued, even if Mr. Bell had shown the exception applied, he still failed to establish Child's mental health therapy records "contain exculpatory evidence to a reasonable certainty" as required by our case law.

¶8 The district court denied Mr. Bell's motion for production of Child's mental health therapy records. It concluded he failed to make the "particular showings regarding relevance," or that the records were "reasonably certain to contain exculpatory information." The court of appeals affirmed. It held that even if Mr. Bell had established that Child suffers from a physical, mental, or emotional condition and that the condition is an element of a claim or defense,[6] dismissal was proper because he failed to meet the "'reasonable certainty' requirement" under our case law.[7]

¶9 We granted Mr. Bell's petition for certiorari. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

---

[5] UTAH R. EVID. 506(d)(1).

[6] *State v. Bell*, 2018 UT App 230, ¶ 13, 438 P.3d 104.

[7] *Id.* ¶ 13–14.

**Standard of Review**

¶10 Mr. Bell asks us to determine whether the court of appeals erred in affirming the district court's denial of his request for limited review of Child's privileged mental health therapy records. "When the existence of a privilege [(or an exception to a privilege)] turns on a question of law, we review for correctness."[8] If "the existence of a privilege [(or exception)] turns on questions of fact, we give deference to the district court's underlying fact finding and do not set those findings aside unless they are clearly erroneous."[9] "On certiorari, we review the decision of the court of appeals . . . for correctness[,] and give its conclusions of law no deference."[10]

**Analysis**

¶11 Mr. Bell argues that the court of appeals erred in affirming the district court's denial of his request for limited review of Child's privileged therapy records. The crux of his argument is that the "reasonable certainty" test we use to determine whether privileged therapy records should be reviewed violates his due process rights under the rule established in the United States Supreme Court decision in *Pennsylvania v. Ritchie*.[11] But Mr. Bell fails to demonstrate that the therapy records in question are subject to an exception under Utah Rule of Evidence 506(d)(1)(A).[12] And because establishing an

---

[8] *State v. Vallejo*, 2019 UT 38, ¶ 34, 449 P.3d 39.

[9] *Id.*

[10] *Bluemel v. State*, 2007 UT 90, ¶ 9, 173 P.3d 842 (quoting *Bear River Mut. Ins. Co. v. Wall*, 1999 UT 33, ¶ 4, 978 P.2d 460).

[11] 480 U.S. 39 (1987).

[12] The State points out that Mr. Bell, for the first time on certiorari, alleges some of the requested records were not privileged because Child's therapist did not qualify as a "mental health therapist" under the rule. We decline to address this issue because it "is beyond the scope of the question on which we granted certiorari" and "was not addressed by the court of appeals." *State v. Loveless*, 2010 UT 24, ¶ 1 n.1, 232 P.3d 510 (citations omitted). Additionally, Mr. Bell does not address why we should reach this issue despite his failure to raise the issue below.

exception under the evidentiary rule is a threshold determination, we need not decide whether Mr. Bell has satisfied our "reasonable certainty" test or whether that test is unconstitutional.[13] As a result, we affirm the court of appeals.

¶12 But even though we affirm the court of appeals without addressing Mr. Bell's constitutional argument, we note that he raises significant constitutional and policy concerns. As a result, we refer rule 506 to our rules committee for review.

### I. Mr. Bell Failed to Establish an Exception to the Mental Health Therapist-Patient Privilege

¶13 Mr. Bell argues that the district court's refusal to allow limited review of Child's privileged mental health therapy records violated his right to due process. His primary argument is that the "reasonable certainty" test, which requires a criminal defendant to make an independent showing that the requested records will contain exculpatory evidence, is overly stringent and should be repudiated. But our "reasonable certainty" test applies only after a criminal defendant has established that an exception to the privilege under rule 506 of the Utah Rules of Evidence applies. Because Mr. Bell has failed to show that an exception to the privilege under rule 506 applies, his request for limited review of Child's mental health therapy records fails even if he were able to satisfy the "reasonable certainty" test.[14] As a result, we affirm the court of appeals on this alternative basis.[15]

¶14 Under Utah Rule of Evidence 506(b), a patient has the privilege "to refuse to disclose . . . information that is communicated in confidence to a physician or mental health

---

[13] *State v. Worthen*, 2009 UT 79, ¶ 39 n.8, 222 P.3d 1144 ("We emphasize that a defendant must meet the plain language of rule 506(d)(1) independently of meeting the reasonable certainty test.").

[14] *See* UTAH R. EVID. 506(d)(1).

[15] *See Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225 (stating that an appellate court can affirm "on any legal ground or theory apparent on the record, even though . . . [it] was not considered or passed on by the lower court" (citation omitted)).

therapist for the purpose of diagnosing or treating the patient."[16] This privilege has three enumerated exceptions, one of which is at issue in this appeal.[17] Rule 506(d)(1)(A) provides that a patient cannot assert the privilege "[f]or communications relevant to an issue of the physical, mental, or emotional condition of the patient . . . in any proceeding in which that condition is an element of any claim or defense."

¶15 In other words, rule 506(d)(1)(A) creates an exception to the general rule that a patient's therapy records are privileged when the criminal defendant can show (1) that the patient has a "physical, mental, or emotional condition" and (2) that this condition "is an element" of his or her defense. Additionally, in our previous cases, we have explained that after a criminal defendant satisfies the first two threshold requirements, the defendant must also demonstrate that, with reasonable certainty, "exculpatory evidence exists [in the mental health therapy record] which would be favorable to [the] defense."[18] This third requirement is referred to as the "reasonable certainty" test under our case law.[19]

---

[16] UTAH R. EVID. 506(b). The rule further defines the scope of the privilege by defining "[p]atient" and "[m]ental health therapist." *Id*. 506(a)(1), (3). Additionally, it extends the privilege to the entire diagnostic process by the provider, including patient examinations, communications with third parties in furthering the patient's interest, and appropriate treatment plans following diagnosis. *Id*. 506(b)(1)–(3).

[17] *Id.* 506(d).

[18] *State v. Blake*, 2002 UT 113, ¶ 19, 63 P.3d 56 (second alteration in original) (quoting *State v. Cardall*, 1999 UT 51, ¶ 30, 982 P.2d 79).

[19] *State v. J.A.L.*, 2011 UT 27, ¶ 48, 262 P.3d 1. Even though the Utah Rules of Evidence apply equally in both civil and criminal cases, we have never required a party in a civil case to meet the "reasonable certainty" test and have only applied the test to criminal defendants seeking limited review of privileged records. Generally, when we are applying a rule of evidence, we refer to a party's request for privileged records. But because we have limited the "reasonable certainty" test to criminal defendants, we refer only to a criminal defendant's request for limited review of privileged records throughout this opinion.

¶16 This three-part showing is a sequential test.[20] In other words, a court must not proceed to the next step in the analysis if it determines the criminal defendant failed to meet his or her burden of proof at a previous point.[21] So the first step in a criminal defendant's efforts to obtain a patient's privileged mental health therapy records is to show that the patient has a condition under rule 506(d)(1)(A). But Mr. Bell fails to satisfy this requirement.

¶17 A condition under rule 506(d)(1)(A) is a state that persists over time that "significantly affects a person's perceptions, behavior, or decision[-]making in a way that is relevant to the reliability of the person's testimony."[22] It must be more than "mere expressions of emotion" but "is not limited to diagnosable disorders or illnesses."[23]

¶18 For example, in *State v. Worthen*, this court found that a patient had an emotional condition when a criminal defendant provided extrinsic evidence of the patient's significant "frustration" and "hatred" toward her parents that may have led to false accusations of sexual abuse.[24] In that case, Mr. Worthen was charged with aggravated sexual abuse based on allegations his adopted daughter made to her counselor.[25] Mr. Worthen

---

[20] *Id.*

[21] *Id.* In Mr. Bell's case, the court of appeals "assum[ed], without deciding," that Mr. Bell met "the first two requirements" under the three-part showing. *State v. Bell*, 2018 UT App 230, ¶ 13, 438 P.3d 104. But it determined Mr. Bell's request failed because he "provide[d] nothing close to the amount of extrinsic evidence required to meet the 'reasonable certainty' standard." *Id.* ¶ 15. Because the court of appeals should have determined whether Mr. Bell established a condition under rule 506(d)(1) as a threshold matter, we affirm on this alternative basis. *See State v. Worthen*, 2009 UT 79, ¶ 19, 222 P.3d 1144. ("Only after this first question is answered may a reviewing court evaluate whether the person seeking access to the exception has shown that the records contain exculpatory evidence to a reasonable certainty.").

[22] *Id.* ¶ 21.

[23] *Id.*

[24] *Id.* ¶¶ 28, 36.

[25] *Id.* ¶¶ 1, 5.

sought his daughter's privileged counseling records to "support[] his defense that [his daughter] had extreme hatred and frustration toward the Worthens and therefore had a motive to fabricate the [sexual abuse] allegations in order to be removed from the Worthen home."[26]

¶19 We determined that Mr. Worthen made a sufficient showing that his daughter had "an emotional condition contemplated by the rule" based on her "frustration with, and hatred toward, her parents."[27] To establish this condition, he provided thirteen different journal entries, written by his daughter, which "demonstrated persistent hostility" and a "desire to leave the home."[28] Mr. Worthen also provided a discharge summary from his daughter's inpatient admission following her suicide attempt.[29] The discharge summary specifically stated that his daughter "looked for ways to interpret statements and behavior in a way to mesh with her negative thinking . . . [and] was very prone to major misinterpretations."[30] Because the daughter's "'frustration with, and hatred toward' her parents"[31] was something that "persist[ed] over time" and "affected [her] perceptions, behavior, [and] decision[-]making in a way that [was] relevant to the reliability of [her] testimony,"[32] we held that "it [was] an emotional condition contemplated by the rule."[33]

¶20 In this case, Mr. Bell fails to allege that Child has *any* condition under the rule. In fact, at oral argument, Mr. Bell conceded that he could not identify a specific condition. And even when we consider other evidence that he provided to support other requirements of rule 506's three-part test, we do not find that any of these arguments or supporting evidence demonstrate that Child had a condition contemplated by the rule.

---

[26] *Id.* ¶ 1.

[27] *Id.* ¶ 28 (internal quotation marks omitted).

[28] *Id.* ¶ 28.

[29] *Id.* ¶¶ 3, 7.

[30] *Id.* ¶ 3 (second alteration in original).

[31] *Id.* ¶ 28.

[32] *Id.* ¶ 21.

[33] *Id.* ¶ 28.

¶21 For instance, in his motion requesting limited review of Child's records, Mr. Bell points to two facts to support his assertion that he is entitled to limited review of Child's therapy records.[34] First, Mr. Bell states that Child's refusal to talk to the detective in the initial interview and her decision to disclose the abuse to the detective only after she had received months of therapy shows a reasonable probability that she was coached during the intervening therapy. And second, he argues that, due to Child's age and suggestibility, therapy could have "tainted her testimony."

¶22 But a child who refuses to talk to a detective, who then later changes her mind, does not have a "condition" under the rule. And Mr. Bell provides no factual support that Child was particularly suggestible, such that she may have been more prone to improper coaching during therapy. He fails to allege any facts that the counseling methods were inappropriate based on Child's age, and as a result, suggest that she was coached. In other words, we do not view Mr. Bell's mere speculation, without any factual support, that Child was coached during therapy to constitute a "physical, mental, or emotional condition" under rule 506(d)(1)(A). Because Mr. Bell does not establish a "condition" under rule 506(d)(1)(A), we affirm the court of appeals.

II. Although We Do Not Reach Mr. Bell's Argument That His Right to Due Process Was Violated, We Note That Mr. Bell Raises Important Concerns and Refer Rule 506 to Our Rules Committee

¶23 Mr. Bell's main argument on appeal is that our "reasonable certainty" test violates his due process rights under

---

[34] On appeal, Mr. Bell argues for the first time he sought records because they "may pertain to the alleged victim's animus toward [Mr. Bell] and/or motive to fabricate allegations of abuse," much like the daughter in *Worthen*. But this court does "not consider issues raised 'for the first time on appeal unless the [district] court committed plain error or exceptional circumstances exist.'" *State v. Bozung*, 2011 UT 2, ¶ 7 n.4, 245 P.3d 739 (alteration in original) (citation omitted). In his motion to the district court, Mr. Bell did not include any allegation that Child held animus towards him or that Child had some other motive to fabricate an allegation of abuse. Because Mr. Bell raises this for the first time in his brief, we decline to address it.

the United States Supreme Court decision in *Pennsylvania v. Ritchie*.[35] While he acknowledges that protecting patient privacy is important, he asserts that the "reasonable certainty" test sets the bar too high for criminal defendants seeking limited review of privileged records. Although we do not reach this issue because Mr. Bell failed to establish a condition under rule 506(d)(1)(A), we briefly address his concerns regarding the "reasonable certainty" test and refer them to our rules committee for consideration.

¶24 The "reasonable certainty" test is the third and final showing a criminal defendant must make to obtain limited review of privileged mental health therapy records.[36] Under this test, a criminal defendant has the burden of convincing the district court that the requested records contain exculpatory evidence favorable to the defense.[37] Generally, this requires that a criminal defendant identify his or her "specific and narrow defense,"[38] and then offer extrinsic evidence that ties the patient's condition to the specific records requested.[39] By establishing an evidentiary threshold, this test seeks to narrow the scope of the criminal defendant's request, and thereby prevent criminal defendants from unnecessarily engaging in a "fishing expedition" through a patient's mental health therapy records.[40]

¶25 Mr. Bell argues that the evidentiary threshold created by the "reasonable certainty" test is too high and, as a result, violates his due process rights under *Ritchie*.[41] In *Ritchie*, Mr. Ritchie sought the protected records of the state agency that investigated sexual abuse allegations against him.[42] The records were protected under a Pennsylvania statute which provided eleven exceptions.[43]

---

[35] 480 U.S. 39 (1987).

[36] *State v. J.A.L.*, 2011 UT 27, ¶ 48, 262 P.3d 1.

[37] *State v. Worthen*, 2009 UT 79, ¶ 39, 222 P.3d 1144.

[38] *Id.* ¶ 40.

[39] *Id.* ¶¶ 41–42.

[40] *State v. Gomez*, 2002 UT 120, ¶ 6, 63 P.3d 72; *see also Worthen*, 2009 UT 79, ¶ 38.

[41] 480 U.S. 39 (1987).

[42] *Id.* at 43.

[43] *Id.*

One of the exceptions allowed disclosure by any "court of competent jurisdiction pursuant to a court order."[44] Although the records Mr. Ritchie sought were already in the trial court's possession, the court did not review the records in their entirety, and as a result, did not know whether they contained material and exculpatory evidence.[45]

¶26 Because it could not determine, without knowledge that the unviewed portions of the records contained material evidence, whether Mr. Ritchie's right to due process was violated, the Supreme Court remanded the case to the trial court for a review of the entire record.[46] The Court provided two reasons for its decision to remand. First, it explained that the protected records were in the State's possession, and that "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment."[47] Second, the Court noted that the state statute permitted disclosure pursuant to a court's order in any judicial proceeding.[48] So the statute that protected the records provided an exception for "criminal prosecutions," without any additional showing from the defendant.[49]

¶27 Following the Supreme Court's decision in *Ritchie*, we were presented with a similar question in *State v. Cardall*.[50] And, in our attempt to apply *Ritchie*, we created what we now refer to as our "reasonable certainty" test. After determining that the defendant had satisfied the first two requirements of the privilege exception under rule 506(d)(1)(A), we interpreted *Ritchie* as requiring the defendant to also "show with reasonable certainty

---

[44] *Id.* at 44 (internal quotation marks omitted). This exception appears to be a broad exception because it provides a court of "competent jurisdiction" discretion to allow disclosure in any judicial proceeding. *Id.*

[45] *Id.*

[46] *Id.* at 58.

[47] *Id.* at 57.

[48] *Id.* at 57–58.

[49] *Id.*

[50] 1999 UT 51, 982 P.2d 97.

that exculpatory evidence exists which would be favorable to his defense."[51] So following our decision in *Cardall*, criminal defendants were required to independently demonstrate, with reasonable certainty, that the privileged records contain evidence that is material to a claim or defense.[52]

¶28 In this case, Mr. Bell argues that, under the Supreme Court's decision in *Ritchie*, the district court violated his due process rights by failing to review Child's mental health therapy records. And in so arguing, he criticizes our decision in *Cardall* as imposing too stringent a standard.

¶29 But Mr. Bell's *Ritchie* argument may be misplaced for two reasons. First, in *Ritchie*, the Supreme Court based its decision on the fact that a criminal defendant's right to due process is implicated when the privileged records are in the State's possession, not when the privileged records are in the possession of a private party.[53] In this case, it does not appear that Child's records are in the State's possession. Second, the *Ritchie* Court's decision was also based on the language of the Pennsylvania statute—a statute that differs substantially from our rules of evidence. For this reason, the Supreme Court's decision in *Ritchie* did not address whether a state could create an absolute privilege, forbidding a defendant to access privileged records under any circumstance.[54] In other words, the *Ritchie* decision does not provide guidance on whether our rules of evidence have set the evidentiary burden too high for a criminal defendant.[55]

---

[51] *Id.* ¶ 30.

[52] *Id.*

[53] The Court did not decide whether Mr. Ritchie was entitled to access the protected records under the Sixth Amendment's Compulsory Process Clause, which might compel a private party to disclose protected records. *Ritchie*, 480 U.S. at 56 ("[W]e need not decide today whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment['s Due Process Clause].").

[54] *See Gomez*, 2002 UT 120, ¶ 16 (holding that the statutory privilege created by the Confidential Communications for Sexual Assault Act is absolute, and as a result, *Ritchie* did not control).

[55] *Id.*

¶30 We acknowledge, however, that our interpretation of *Ritchie* in *Cardall* may suffer from the same defects as Mr. Bell's *Ritchie* argument. In *Cardall*, we suggested that the holding in *Ritchie* required us to adopt the "reasonable certainty" test without acknowledging any distinction between the statute at issue in that case and our rules of evidence or between privileged documents held by the State and documents held by private parties. So our adoption of the "reasonable certainty" test may have stemmed from a misreading of the opinion in *Ritchie*.

¶31 But even though our adoption of the "reasonable certainty" test in *Cardall* and Mr. Bell's arguments in this case may rely on a misreading of *Ritchie*, we note that both *Cardall* and Mr. Bell raise important concerns regarding the current state of the privilege exception under rule 506(d)(1)(A). For example, our adoption of the "reasonable certainty" test in *Cardall* seems to have helped address some uncertainty about what is required under the rule's "condition" and "element to the defense" requirements.[56] For instance, in *Cardall*, we determined that a "condition" included a child's "mental[] and emotional[]" instability that "led her to lie about an attempted rape" on a different occasion.[57] And we held that this condition was an element of the criminal defendant's defense because she was "a habitual liar."[58] Later, in *State v. Worthen*, we determined that the alleged victim's extreme and persistent hatred toward her parents

---

[56] *See State v. Worthen*, 2009 UT 79, ¶ 21, 222 P.3d 1144 (holding that a condition under rule 506(d)(1) "is not limited to diagnosable disorders or illnesses" but "does not include mere expressions of emotion" and must be a "state that persists over time" while "significantly affect[ing] a person's perceptions, behavior, or decision[-]making"); *see also State v. Blake*, 2002 UT 113, ¶¶ 18, 24, 63 P.3d 56 (declining to grant the defendant's request for in camera review under the rule 506(d)(1)(A) exception, and instead rejecting his request because he failed to show, with reasonable certainty, that the requested records contained exculpatory evidence); *Cardall*, 1999 UT 51, ¶ 30 (failing to define rule 506(d)(1)(A) exception and summarily determining the defendant made an adequate showing).

[57] *Cardall*, 1999 UT 51, ¶ 29.

[58] *Id.*

was a condition under the rule, and that this condition was an element to Mr. Worthen's defense because it "caused her to fabricate abuse allegations" in order to be removed from the home.[59] These decisions may not provide a clear definition of what is required for criminal defendants seeking limited review of privileged documents, and, as a result, they may lead to a significant number of meritless requests. But, by raising the evidentiary burden imposed on criminal defendants before they may obtain limited review of privileged documents, our "reasonable certainty" test operates to more clearly identify, and limit, the situations in which criminal defendants can access privileged records.[60]

¶32 Mr. Bell, on the other hand, raises the possibility that the stringent evidentiary burden imposed by our "reasonable certainty" test may violate criminal defendants' due process rights by preventing them from mounting a full and fair defense. This too is an important concern. And even though we do not address the merits of Mr. Bell's *Ritchie* arguments in this case, we refer this issue to our rules committee. In considering this issue, we direct our rules committee to consider the importance of maintaining a strong privilege rule,[61] of more clearly defining what is required to qualify for exceptions to privilege, and of respecting a criminal defendant's constitutional rights.[62]

---

[59] *Worthen*, 2009 UT 79, ¶ 37.

[60] *See Blake*, 2002 UT 113, ¶ 19 (noting that the "reasonable certainty" test is a "stringent test," which is "deliberate and prudent in light of the sensitivity of these types of records").

[61] We have previously noted that victims of sexual abuse have constitutional and statutory rights, and that these "rights . . . support considerable policy-based arguments for supporting evidentiary privileges." *Worthen*, 2009 UT 79, ¶ 55 (citing similar discussions in *State v. Gonzales*, 2005 UT 72, ¶ 33, 125 P.3d 878 and *Blake*, 2002 UT 113, ¶ 16).

[62] While Mr. Bell argues only that his right to due process is implicated, we note there are other constitutional rights at issue. For example, both the federal and Utah constitutions include "the right to confrontation and compulsory process." *State v. Cramer*, 2002 UT 9, ¶ 19, 44 P.3d 690.

**Conclusion**

¶33 In his request for limited review of Child's privileged mental health therapy records, Mr. Bell failed to establish that Child had a "condition" under rule 506(d)(1)(A). As a result, we affirm the court of appeals without considering the merits of Mr. Bell's challenge to our "reasonable certainty" test. But we note that he raises significant concerns about this test, and as a result, we ask the rules committee to review rule 506 to ensure that it appropriately balances patients' privacy with criminal defendants' constitutional rights.

———————